IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

NATALIE BOLLING, individually and
on behalf of all others similarly
situated, et al.,

    Plaintiffs,

        v.                                    CIVIL ACTION FILE
                                              NO. 1:23-CV-671-TWT

MERCEDES-BENZ USA, LLC, et al.,

    Defendants.

## OPINION AND ORDER

This is a products liability case. It is before the Court on the
Defendants'[1] Motion to Dismiss the Class Action Complaint [Doc. 33] and the
Defendants' Motion to Dismiss the First Amended Complaint [Doc. 43]. As
explained below, the Defendants' Motion to Dismiss the Class Action
Complaint [Doc. 33] is DENIED as moot and the Defendants' Motion to
Dismiss the First Amended Complaint [Doc. 43] is GRANTED in part and
DENIED in part.

---

[1] The Defendants in this case are Mercedes-Benz USA, LLC and
Mercedes-Benz Group AG. When the Court refers to them collectively in this
Order, it will call them "the Defendants."

## I.    Background[2]

This case involves an alleged defect in panoramic sunroofs ("PSRs") installed in motor vehicles. PSRs are glass sunroofs that, on some vehicles, stretch across much of the entire roof of the vehicle. (First Am. Compl. ¶ 1). Mercedes-Benz has been offering vehicles with factory-installed PSRs since the early 2000s. (*Id.* ¶ 41). The Defendant Mercedes-Benz Group AG ("MBG") is a foreign corporation "engaged in the business of designing, engineering, manufacturing, testing, marketing, supplying, selling, and distributing motor vehicles, including the Class Vehicles, in the United States." (*Id.* ¶ 27). The Defendant Mercedes-Benz USA, LLC ("MBUSA") is an MBG-owned distributor for passenger cars in the United States. (*Id.* ¶ 26). The Named Plaintiffs are various individuals who purchased Mercedes-Benz vehicles whose PSRs suddenly shattered under normal driving conditions. (*Id.* ¶ 20-25, 101, 117, 126, 139, 150, 157). The Plaintiffs bring this case on behalf of a putative class (and several putative subclasses) of individuals who purchased or leased a Class Vehicle.[3] (*Id.* ¶ 162).

---

[2] The Court accepts the facts as alleged in the First Amended Complaint as true for purposes of the present Motion to Dismiss. *Wildling v. DNC Servs. Corp.*, 941 F.3d 1116, 1122 (11th Cir. 2019).

[3] The Class Vehicles include the following models: 2011-present C-Class, 2014-present CLA-Class, 2011-present E-Class, 2011-present GL-Class/GLS-Class, 2011-present GLK-Class/GLC-Class, 2012-present M-Class/GLE Class, 2015-2017 Mercedes Maybach S-600, 2011-2012 R-Class, 2011-present S-Class, 2011-2019 SL-Class, and 2013-2020 SLK-Class/SLC-Class. (*Id.* ¶ 161).

The Plaintiffs allege that the PSRs installed in the Class Vehicles are defective because they "are prone to spontaneously and often loudly shattering under normal driving conditions, creating a safety hazard for the vehicle occupants and surrounding traffic." (*Id.* ¶ 4). Several characteristics of the Class Vehicles' PSRs allegedly cause this defect. The use of tempered glass in the Class Vehicles—as opposed to the laminated glass used by other manufacturers—makes the PSRs susceptible to shattering if, during the tempering process, the outer compressive layer is compromised. (*Id.* ¶ 49). The thin glass in the Class Vehicles' PSRs make the tempering process even more difficult because "the compressive layers are thinner, increasing the probability for the glass to be compromised and result in catastrophic failure." (*Id.* ¶¶ 50-51). Accordingly, "[a] scratch or flaw created during the manufacturing process can result in progressive damage such that once the damage creeps into the compressive layer, the entire sunroof shatters." (*Id.* ¶ 51). Furthermore, the PSRs in the Class Vehicles have ceramic paint applied prior to the tempering process. (*Id.* ¶ 52). That ceramic enamel is an adulterant that "significantly weaken[s] the structural strength and integrity of the Class Vehicles' tempered panoramic sunroof glazing." (*Id.* ¶ 53). Altogether, these flaws cause the PSRs to be unable to withstand the stress present under ordinary driving conditions and to have a propensity to shatter. (*Id.* ¶ 59).

The Plaintiffs allege that they each bought or leased a Class Vehicle with a PSR, and the PSR subsequently shattered under normal driving

3

conditions. (*Id.* ¶ 97, 101, 113, 117, 120, 126, 133, 139, 145, 150, 152, 157). They each state that they brought their broken vehicle to a Mercedes-Benz dealership to replace the PSR and were told that Mercedes-Benz would not cover the repairs. (*Id.* ¶ 103-06, 119, 130-31, 141, 143, 150-51, 159). Based on these alleged facts, the Plaintiffs bring the present lawsuit asserting breach of warranty, fraudulent concealment, and unjust enrichment claims as well as related state law claims. The Defendants moved to dismiss the original Complaint, and the Plaintiffs later filed the First Amended Complaint. The Defendants then moved to dismiss the First Amended Complaint.

## II.   Legal Standard

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); Fed. R. Civ. P. 12(b)(6). A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is "improbable" that a plaintiff would be able to prove those facts; even if the possibility of recovery is extremely "remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff. *See Quality Foods de Centro Am., S.A. v. Latin Amwi. Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 994-95 (11th Cir. 1983); *see also Sanjuan v. American Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994) (noting that at the pleading stage, the plaintiff

"receives the benefit of imagination"). Generally, notice pleading is all that is required for a valid complaint. *See Lombard's, Inc. v. Prince Mfg., Inc.*, 753 F.2d 974, 975 (11th Cir. 1985). Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555).

## III.   Discussion

As an initial matter, the Plaintiffs filed its First Amended Complaint after the Defendants filed its original Motion to Dismiss [Doc. 33]. "An amended complaint supersedes the original complaint, and thus renders moot a motion to dismiss the original complaint." *Southern Pilot Ins. Co. v. CECS, Inc.*, 15 F. Supp. 3d 1284, 1287 n. 1 (N.D. Ga. 2013) (citations omitted). Therefore, the Defendants' first Motion to Dismiss [Doc. 33] is denied as moot.

After the Plaintiffs amended their Complaint, the Defendants filed a Motion to Dismiss the First Amended Complaint [Doc. 43]. In this Motion to Dismiss, the Defendants argue that the Plaintiffs lack standing, that the First Amended Complaint is an improper "shotgun pleading," and that the Plaintiffs failed to properly state any of its claims. The Court will consider each of these arguments in turn.

## A. Standing

The Defendants move under Rule 12(b)(1) to dismiss the First Amended Complaint. (Defs.' Br. in Supp. of Mot. to Dismiss, at 5-11). A complaint should be dismissed under Rule 12(b)(1) only where the court lacks jurisdiction over the subject matter of the dispute. Fed. R. Civ. P. 12(b)(1). Attacks on subject matter jurisdiction come in two forms: "facial attacks" and "factual attacks." *Garcia v. Copenhaver, Bell & Assocs., M.D.'s, P.A.*, 104 F.3d 1256, 1260 (11th Cir. 1997). The Defendants assert a factual attack here. (Defs.' Br. in Supp. of Mot. to Dismiss, at 6; Reply Br. in Supp. of Mot. to Dismiss, at 2-3). Factual attacks "challenge the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Garcia*, 104 F.3d at 1261 (quotation marks omitted). Generally on a factual attack, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Scarfo v. Ginsberg*, 175 F.3d 957, 960-61 (11th Cir. 1999) (quotation marks and citation omitted). The Defendants argue (1) the Plaintiffs have not satisfied the traceability element of standing, (2) the Plaintiffs cannot represent people who bought vehicles different than their own, and (3) the Plaintiffs lack standing for equitable relief. (Defs.' Br. in Supp. of Mot. to Dismiss, at 5-11).

6

i.    Traceability

With respect to traceability, the Defendants contend there is no standing because the "Plaintiffs do not prove their PSRs shattered because of the defect they allege." (Defs.' Br. in Supp. of Mot. to Dismiss, at 6). The Plaintiffs respond that this challenge is a premature merits argument and that they have sufficiently alleged facts for standing. (Pls.' Br. in Opp'n to Mot. to Dismiss, at 4-6). The Court agrees with the Plaintiffs.

Many of the cases the Defendants cite in their brief involve complaints that were dismissed due to incomplete allegations. *See Corona v. Mercedes-Benz USA, LLC*, 2022 WL 17089814, at *2 (C.D. Cal. Sept. 28, 2022) (dismissing complaint for lack of standing because it did not allege that the stalling of the vehicle was caused by the defect and because the defense provided evidence it was not); *Doss v. Gen. Mills, Inc.*, 2019 WL 7946028, at *2 (S.D. Fla. June 14, 2019) (dismissing complaint for lack of standing because "there is no allegation that she did not receive, at a minimum, the product General Mills said it was offering."); *Callaghan v. BMW of N. Am., LLC.*, 2014 WL 1340085, *3 (N.D. Cal. Apr. 2, 2014) (dismissing complaint for lack of standing because "no allegations can be found suggesting plaintiffs or anyone else has suffered the 'sudden and premature failure' of an automatic transmission *because* the automatic transmission fluid was not timely changed."); *Contreras v. Toyota Motor Sales USA, Inc.*, 2010 WL 2528844, at *6 (N.D. Cal. June 18, 2010) (dismissing complaint for lack of standing when

the plaintiffs failed to allege several facts that would demonstrate they suffered an injury-in-fact), *rev'd on other grounds*, 484 F. App'x 116 (9th Cir. 2012).

By contrast, the Plaintiffs plausibly allege that they suffered injuries that are fairly traceable to the Defendants. The Plaintiffs describe in detail the choices that the Defendants allegedly made which caused its PSRs to be more susceptible to shattering. (First Am. Compl. ¶¶ 39-59). They further allege that the PSRs in the Plaintiffs' cars in fact shattered. (*Id.* ¶¶ 101-02, 117-18, 126-27, 139-40, 150, 157-58). The Plaintiffs assert that the Defendants would not pay for the repairs to the PSRs. (*Id.* ¶¶ 106, 119, 131, 141, 151, 159). Finally, the Plaintiffs explicitly state that the Defendants' actions are the cause of their injuries. (*Id.* ¶¶ 199, 222, 243, 254, 262, 277, 299, 318, 332, 339-40, 354). Since the Plaintiffs allege concrete injuries that are traceable to the Defendants, most of the cases cited by the Defendants are simply inapposite.

The Defendants make much of the fact that the Plaintiffs have not proffered any evidence outside of their First Amended Complaint to support standing. (Reply Br. in Supp. of Mot. to Dismiss, at 2-3). More specifically, the Defendants argue that the Plaintiffs "[did] not prove their PSRs shattered because of the defect they allege" rather than as a "result of an outside influence." (Defs.' Br. in Supp. of Mot. to Dismiss, at 6). To support its argument that the First Amended Complaint should be dismissed because of this lack of evidence, the Defendants cite to *Sabater v. American Journey*

8

*(PET), LLC*, 570 F. Supp. 3d 1160 (S.D. Fla. 2021). There, the plaintiff sued dog food manufacturers for advertising dog food as "grain-free" even though the products allegedly contained wheat. *Id.* at 1162. In support of their motion to dismiss, the defendants provided "undisputed evidence contradicting Plaintiff's allegations." *Id.* at 1163. Because there were "no specifics in the [First Amended Complaint]—or in other counterevidence—addressing" that evidence and because of the "Plaintiff's failure to allege that the bags he purchased contained wheat," the court dismissed the case for lack of standing. *Id.* at 1164.

Neither of those rationales support dismissal in this case. First, the Plaintiffs explicitly dispute the finding that the PSRs shattered because of outside influences. (First Am. Compl. ¶ 70 ("Mercedes claims its sunroofs shatter as a result of impact from roadway objects, but this explanation is incomplete, speculative and pretextual"); *see also* First Am. Compl. ¶¶ 94, 107-08, 129, 139, 150, 157). Second, as described above, the Plaintiffs adequately alleged that their vehicles had a defect that caused them injuries. Because of these differences, the Court does not find *Sabater* to be persuasive here.

The Defendants are correct that when there is a factual attack on subject matter jurisdiction, courts make findings of fact irrespective of the pleadings, but that principle is not unyielding. *Garcia*, 104 F.3d at 1261. If a factual attack implicates an element of the cause of action, "[t]he proper course of action for

the district court ... is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case." *Id.* (citation omitted). That is what is happening here. If the Plaintiffs are ultimately unable to show that the PSRs shatter because of a defect rather than outside influences, they will be unable to prove causation and their claims will fail. Yet, without the benefit of discovery, it is too early to know whether the Plaintiffs will be able to do so. At bottom, jurisdictional standing doctrine is in place to ensure that the federal courts are hearing "actual cases or controversies." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337-38 (2016) (citation omitted). It is not meant to preempt discovery because plaintiffs have not proven their case at the pleading stage. Accordingly, the Court will not dismiss the First Amended Complaint for lack of traceability.

### ii.    Standing Over Other Vehicles

The next basis for the Defendant's Rule 12(b)(1) motion is that the Plaintiffs do not have standing to assert claims regarding vehicle models and/or model years that are different from the ones the Plaintiffs purchased. (Defs.' Br. in Supp. of Mot. to Dismiss, at 8). The Plaintiffs counter that this issue should be deferred until class certification. (Pls.' Br. in Opp'n to Mot. to Dismiss, at 6). The Court agrees with the Plaintiffs.

Federal courts have taken divergent approaches to the question of when to analyze the named plaintiffs' standing over absent class members' claims. *Compare Porter v. Chrysler Grp. LLC*, 2013 WL 6839872, at *2-3 (M.D. Fla.

10

Dec. 27, 2013) ("Plaintiffs need not prove that up now; such fact-intensive Article III standing inquiry is better suited to the class-certification stage.") *with Garcia v. Kashi Co.*, 43 F. Supp. 3d 1359, 1394 (S.D. Fla. 2014) (partially dismissing a complaint before class certification because "a named plaintiff in a consumer class action cannot raise claims relating to those other products which he did not purchase." (brackets, quotation marks, and citation omitted)). For most cases in this District, such analysis has been done at the class certification stage. *See, e.g.*, *Hadjian v. Mercedes-Benz, USA, LLC*, 2022 WL 3699603, at *5 (N.D. Ga. March 31, 2022); *Amin v. Mercedes-Benz USA, LLC*, 301 F. Supp. 3d 1277, 1283-85 (N.D. Ga. 2018); *McCabe v. Daimler AG*, 948 F. Supp. 2d 1347, 1374 (N.D. Ga. 2013).

The only case from this District that the Defendants cite to in support of its position is *Callen v. Daimler AG*, 2021 WL 4523436, at *3-4 (N.D. Ga. Oct. 4, 2021). There, the named plaintiff brought state law claims on behalf of a national class. *Id.* at *3-4. But because the named plaintiff only alleged a legal injury in the state of Georgia, the court held that the named plaintiff could not "seek equitable and injunctive relief individually—or on behalf of class members—under the laws of any other state." *Id.* at *4. In ruling that way, the court relied on *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266 (11th Cir. 2000). There, the Eleventh Circuit stated, "each claim must be analyzed separately, and a claim cannot be asserted on behalf of a class unless at least one named plaintiff has suffered the injury that gives rise to that

claim." *Id.* at 1280 (citation omitted). "Following *Prado*, named plaintiffs in class actions have, time and again, been prohibited from asserting claims under a state law other than that which the plaintiff's own claim arises." *Callen*, 2021 WL 4523436, at *3 (quotation marks and citation omitted).

The present case is distinguishable. Here, "[t]he relevant question…is not whether the Named Plaintiffs have standing to sue Defendants—they most certainly do—but whether their injuries are sufficiently similar to those of the purported Class to justify the prosecution of a nationwide class action." *In re Grand Theft Auto Video Game Consumer Litig. (No. II)*, 2006 WL 3039993, at *3 (S.D.N.Y. Oct. 25, 2006) (citations and footnote omitted). "This question is, at least in the first instance, appropriately answered through the class certification process." *Id.* This is so because the Supreme Court has found it proper to defer conducting an Article III standing analysis when the class certification issues are "logically antecedent" to Article III concerns. *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 831 (1999). "[T]here is a strong consensus in favor of treating class certification as logically antecedent to standing where class certification is the source of the potential standing problems." *Hadjian*, 2022 WL 3699603, at *5 (brackets, quotation marks, and citations omitted).

Because there is at least one named Plaintiff that has standing to assert each claim, there is only a potential standing problem depending on the scope of the class certification. The Plaintiffs have alleged that the same defect is in all of the Class Vehicles and caused the same injury. (First Am. Compl. ¶¶ 41,

65-66). This is enough to defer any ruling on standing over the putative absent class members until the class certification stage. *See, e.g.*, *Carter v. Forjas Taurus, S.A.*, 701 F. App'x. 759, 762, 765 (11th Cir. 2017) (finding standing when the named plaintiff bought only one of nine gun models at issue because "Carter alleged he owned a class gun that suffered from the same defects as the rest of the class guns."); *Hadjian*, 2022 WL 3699603, at *5 ("Plaintiff Hadjian's factual allegations sufficiently articulate his individual standing in connection with his claims regarding various Mercedes-Benz models because they all have substantially identical or identical inlet defects. Thus, even if Plaintiff Hadjian did not purchase each of the Mercedes-Benz models himself, '[t]he [i]nlet [d]effect [sic] is inherent in each Class Vehicle and was present at the time of sale,' assuming the allegations are true." (citation omitted)); *Amin*, 301 F. Supp. 3d at 1284-85 (deferring ruling on standing as to the claims of absent class members because "even if Plaintiffs did not purchase each of the Mercedez–Benz [sic] car models themselves, the HVAC systems in the identified models they did purchase suffered from the same defects as the rest of the models, assuming the allegations are true." (quotation marks, footnote, and citation omitted)). Consequently, the Court will not dismiss the First Amended Complaint with respect to models not purchased by the named Plaintiffs.

###### iii.    Standing to Seek Equitable Relief

The final standing issue the Defendants raise is that the Plaintiffs do not have standing to seek equitable relief. (Defs.' Br. in Supp. of Mot. to Dismiss, at 9-11). There are three requirements for Article III standing for equitable relief. *Cone Corp. v. Fla. Dep't of Transp.*, 921 F.2d 1190, 1203 (11th Cir. 1991). "First…he must demonstrate that he is likely to suffer future injury; second, that he is likely to suffer such injury at the hands of the defendant; and third, that the relief the plaintiff seeks will likely prevent such injury from occurring." *Id.* at 1203-04. The Defendants argue that the Plaintiffs do not plead facts showing there is an inadequate remedy at law nor that there is a serious risk of continuing irreparable injury if relief is not granted. (Defs.' Br. in Supp. of Mot. to Dismiss, at 9-10). The Plaintiffs counter that they have adequately pled the requirements for equitable relief in the First Amended Complaint. (Pls.' Br. in Opp'n to Mot. to Dismiss, at 7-8). The Court does not find that the Plaintiffs lack standing at this time.

The Defendants first argue that because the Plaintiffs seek damages, they cannot establish that there is an inadequate remedy at law. (Defs.' Br. in Supp. of Mot. to Dismiss, at 9-10; Reply Br. in Supp. of Mot. to Dismiss, at 6). However, the Federal Rules of Civil Procedure authorize parties to plead for "alternative or different types of relief." Fed. R. Civ. P. 8(a)(3); *see also Adelphia Cable Partners, Inc. v. E & A Beepers Corp.*, 188 F.R.D. 662, 666 (S.D. Fla. 1999) ("Although equitable relief ultimately may not be awarded

14

where there exists an adequate remedy at law, Plaintiff certainly may plead alternative equitable relief."). As such, the fact that the Plaintiffs seek damages does not necessitate dismissal of the Plaintiffs' request for equitable relief.[4]

The Defendants next argue that there is no serious risk of continuing irreparable injury if the relief sought is not granted. (Defs.' Br. in Supp. of Mot. to Dismiss, at 10-11; Reply Br. in Supp. of Mot. to Dismiss, at 6-7). The Plaintiffs assert that they are at risk of future harm because when the PSRs break, they are replaced with the same allegedly defective PSRs which are at risk of breaking again. (Pls.' Br. in Opp'n to Mot to Dismiss, at 7-8; First Am. Compl. ¶¶ 84, 96). The Defendants reply that this is insufficient because none of the named Plaintiffs have had their replacement PSRs break or need repair and because an NHTSA investigation did not find that the PSRs are inherently defective. (Reply Br. in Supp. of Mot. to Dismiss, at 6-7).

The fact that the replacement PSRs have not broken yet is not indicative of a lack of future risk of harm considering that all but one of the named Plaintiffs' PSRs broke within the last year. (First Am. Compl. ¶¶ 101, 117, 126, 139, 150, 157). The other one—the Plaintiff Bolling's PSR—shattered on

---

[4] The Defendants' citation to *Bolin v. Story*, 225 F.3d 1234, 1242 (11th Cir. 2000) is inapposite. There, the court found that injunctive relief was barred by the Federal Courts Improvement Act, which amended 42 U.S.C. § 1983 to prohibit injunctive relief against a judicial officer in certain circumstances. That provision has no application to this case.

February 18, 2022. (*Id.* ¶ 101) For a latent defect like the one described in the First Amended Complaint, it is unsurprising that none of them have broken again since being repaired within the last year or two. Furthermore, while the NHTSA closed its investigation without finding a "safety-related defect trend," the report explicitly stated that "[t]he closing of this investigation does not constitute a finding by NHTSA that a safety defect does not exist." NAT'L HIGHWAY TRAFFIC SAFETY ADMIN., U.S. DEP'T OF TRANSP., EA 14-002, ENGINEERING ANALYSIS CLOSING REPORT, 6-7 (2021). Even by its own terms, the report does not take a position on whether the PSRs are in fact defective. Finally, as above, the Court will not require the Plaintiffs to prove an element of their case—i.e., that the PSRs are defective—before proceeding to discovery. *See supra* Section III.A.i. The Court declines to dismiss the Plaintiffs' claims on these bases. To the extent that the Defendants move to dismiss the Georgia Unfair Deceptive Trade Practice Act and the Unfair Competition Law claims because the relevant Plaintiffs do not meet the state law requirements for alleging future harm or an inadequate remedy at law, those arguments are addressed below.

### B. Shotgun Pleading

The Defendants contend that the First Amended Complaint should be dismissed as an improper shotgun pleading because it has multiple counts that adopt the allegations of all preceding counts and because it combines multiple claims against multiple defendants without specifying which defendant is

16

responsible for which act. (Defs.' Br. in Supp. of Mot. to Dismiss, at 11). The Court disagrees.

For starters, the First Amended Complaint does not contain "multiple counts that each adopt the allegations of all preceding counts." *Clifford v. Federman*, 855 F. App'x 525, 528 (11th Cir. 2021) (citation omitted). Instead, each count incorporates and adopts the factual allegations at the beginning of the First Amended Complaint. (First Am. Compl. ¶¶ 175, 202, 225, 244, 256, 264, 281, 304, 323, 334, 342). Because the counts only adopt the factual allegations of the First Amended Complaint, each successive claim does not "carry all that came before and the last count" is not "a combination of the entire complaint." *Barmapov v. Amuial*, 986 F.3d 1321, 1325 (11th Cir. 2021) (citation omitted). Therefore, the First Amended Complaint is not a shotgun pleading on this basis.

The second basis the Defendants raise is similarly unavailing. There is a shotgun pleading when a complaint "combin[es] multiple claims against multiple defendants without specifying which defendant is responsible for which act," *Clifford*, 855 F. App'x at 528 (citation omitted). However, "[a] plaintiff may plead claims against multiple defendants by referring to them collectively, for example by referring to a group of defendants as 'defendants.'" *1-800-411-I.P. Holdings, LLC v. Ga. Injury Ctrs., LLC*, 71 F. Supp. 3d 1325, 1330 (S.D. Fla. 2014) (citation omitted). "The practice only runs afoul of the applicable pleading standard where it denies a defendant notice of the specific

claims against it" which most often happens "when broad allegations are directed at a large and diverse group of defendants, leaving unclear just who is alleged to have committed which acts." *Id.* (citations omitted).

That is not what is happening here. In this case, "Defendants are related entities and Plaintiffs are likely to experience difficulty in obtaining information regarding Defendants' internal policies." *Pereda v. Gen. Motors LLC*, 2022 WL 19975388, at *10 (N.D. Cal. Dec. 9, 2022) (quotation marks and citations omitted). "Plaintiffs cannot be expected to know the exact corporate structure and degree of each Defendant's involvement, at this stage in the litigation and prior to discovery." *In re Volkswagen Timing Chain Prod. Liab. Litig.*, 2017 WL 1902160, at *9 (D.N.J. May 8, 2017) (citation omitted). Consequently, the Court finds that the First Amended Complaint is not a shotgun pleading.[5]

---

[5] The Defendants also take issue with the fact that the Plaintiffs "conflate" the two Defendants by using the term "Mercedes" 468 times in the First Amended Complaint. (Reply Br. in Supp. of Mot. to Dismiss, at 7). As an initial matter, this is misleading because that term is often used as a brand name rather than as a reference to the Defendants as entities. (*See, e.g.*, First Am. Compl. ¶ 6 ("The alleged defect may be present in every Mercedes vehicle equipped with a panoramic sunroof…")). Furthermore, the term MBUSA is used about 50 times in the First Amended Complaint and one count is explicitly brought against only MBUSA. Based on this, the Court cannot conclude that the "plaintiffs have not even *attempted* to distinguish between MBUSA and MBG." (Reply Br. in Supp. of Mot. to Dismiss, at 8).

## C. Express Warranty Claim

MBUSA moves to dismiss the Plaintiffs' express warranty claim for failure to state a claim. It asserts three reasons for this: (1) the Plaintiffs Bolling, Dedman, and Phlegar's failure to allege that they complied with the pre-suit notice requirement, (2) design defects are excluded from the New Vehicle Limited Warranty ("NVLW"), and (3) the Plaintiff Phlegar did not allege that she relied on the terms of the NVLW. (Defs.' Br. in Supp. of Mot. to Dismiss, at 12). The Court addresses each of these in turn.

### i.   Pre-Suit Notice

MBUSA maintains that the Plaintiffs Bolling, Dedman, and Phlegar have failed to state an express warranty claim because both the NVLW and state law have pre-suit notification requirements with which the Plaintiffs did not comply. (Defs.' Br. in Supp. of Mot. to Dismiss, at 12-13). The Court agrees with respect to Plaintiffs Dedman and Phlegar. The NVLW provides in part:

> Laws in many states and federal law permit owners and/or lessees to obtain a replacement vehicle or a refund of the purchase or lease price under certain circumstances. The provisions of these laws vary from state to state and vary from the federal law. To the extent allowed or not prohibited by applicable law, MBUSA requires that you first provide us with direct written notification of any alleged unrepaired defect or malfunction, or any other dissatisfaction you have experienced with your vehicle so that we have the opportunity to cure the problem or dissatisfaction ourselves. Giving MBUSA itself this direct notice and opportunity to cure enables us to supplement prior efforts by our authorized Mercedes-Benz Dealership so any ongoing problem can be resolved or the dissatisfaction addressed by us.

(MBUSA's Req. for Judicial Notice, Ex. A at 86, Ex. B at 68).[6] Several courts have addressed this language or virtually identical language and concluded that it requires plaintiffs to give MBUSA direct notice of the defect before filing a lawsuit for breach of the warranty. *See, e.g.*, *McCabe*, 948 F. Supp. 2d at 1359-60; *Callen v. Daimler AG*, 2020 WL 10090879, *11 (N.D. Ga. June 17, 2020). Moreover, the "Plaintiffs do not contend that applicable law prohibits MBUSA from requiring direct written notification of any alleged unrepaired defect or malfunction." *Pinon v. Daimler AG*, 2019 WL 11648560, at * 8 (N.D. Ga. Nov. 4, 2019); (*see* Pls.' Br. in Opp'n to Mot. to Dismiss, at 10-14).

Instead, the Plaintiffs argue that they have satisfied the requirement by presenting their vehicles to the dealers. (Pls.' Br. in Opp'n to Mot. to Dismiss, at 10-11). Furthermore, the Plaintiffs assert that Plaintiff Bolling met the requirement for the additional reason that MBUSA investigated Bolling's claim and refused to cover her repair. (*Id.* at 11). The notion that notifying an authorized dealer is sufficient to notify MBUSA of the defect has been "considered and rejected." *Callen*, 2020 WL 10090879 at *11. For example, the court in *Pinon* stated:

> [T]he statement included in the NVLWs that "[g]iving MBUSA itself this direct notice and opportunity to cure enables us to supplement prior efforts by our authorized dealers," shows that

---

[6] The Plaintiffs "do not contest the Court taking judicial notice of the 2019 and 2022 New Vehicle Limited Warranties. (Pls.' Opp'n to MBUSA's Req. for Judicial Notice, at 1). Since the NVLW is "central to the plaintiff's claim" and since the Plaintiffs do not dispute its contents, the Court takes judicial notice of the NVLWs. *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005).

> MBUSA contemplated the importance of the written notice and
> intended for customers to take the extra step beyond presenting
> their problems to a local dealership . . . Thus, contrary to
> Plaintiffs' contention, presenting their vehicles to an authorized
> Mercedes-Benz center or dealer could not have been the only
> method to present a claim under the NVLW.

*Pinon*, 2019 WL 11648560, at *9 (citation omitted). The Court finds this reasoning persuasive.

Since the Plaintiffs Dedman and Phlegar have not alleged that they informed MBUSA (as opposed to their dealers) of the defect prior to this lawsuit, the Court will dismiss those Plaintiffs' express warranty claim. (*See* First Am. Compl. ¶¶ 130-31, 159). The Plaintiff Bolling adds the allegation that "MBUSA investigated her incident and refused to cover her repair under warranty." (*Id.* ¶ 106). The Court finds that this allegation supports a reasonable inference that MBUSA received "direct notice and [an] opportunity to cure" and was enabled "to supplement prior efforts by [its] authorized Mercedes-Benz Dealership." (MBUSA's Req. for Judicial Notice, Ex. A at 86, Ex. B at 68). Accordingly, the Court finds that Plaintiff Bolling has sufficiently alleged that it satisfied the pre-suit notice requirement of the NVLW.[7]

---

[7] The Plaintiff Bolling's allegations also satisfies the Alabama notice requirement. "Alabama courts have held that notice of breach is a condition precedent to bringing a breach of warranty action, which must be affirmatively pleaded in the complaint." *Hart v. Yamaha-Parts Distrib., Inc.*, 787 F.2d 1468, 1474 (11th Cir. 1986) (citations omitted). The Plaintiffs pled that they "notified Mercedes of the breach within a reasonable time." (First Am. Compl. ¶ 193). Viewed in the light most favorable to the Plaintiffs, the Plaintiff Bolling's additional allegations make that assertion more than just a conclusory statement of law.

ii.    Design Defect Exclusion

The NVLW warrants that "any authorized Mercedes-Benz Dealership will make any repairs or replacements necessary to correct defects in material or workmanship, but not design, arising during the warranty period." (MBUSA's Req. for Judicial Notice, Ex. A at 11, Ex. B. at 13). Furthermore, "[g]lass breakage or scratches are not covered unless positive physical proof of a manufacturing defect can be established." (*Id.*, Ex. A at 18, Ex. B at 20). MBUSA argues that these provisions make the Express Warranty Plaintiffs' claim fail because they allege a design defect rather than a manufacturing defect. (Defs.' Br. in Supp. of Mot. to Dismiss, at 13-15). The Express Warranty Plaintiffs assert that their claim is not barred by these provisions because the manufacturing process is part of the alleged defect. (Pls.' Br. in Opp'n to Mot. to Dismiss, at 14). At this stage in the litigation, the Court agrees with the Express Warranty Plaintiffs.

The difference between a manufacturing defect and a design defect is that a manufacturing defect is "an unintended configuration" while a design defect is "an intended configuration that may produce unintended and unwanted results." *Harduvel v. Gen. Dynamics Corp.*, 878 F.2d 1311, 1317 (11th Cir. 1989). While MBUSA is certainly correct that some of the Express Warranty Plaintiffs' allegations indicate they are pursuing a design defect, other allegations suggest "a deviation from the intended design during the manufacturing process." *Callen*, 2020 WL 10090879 at *7. For example, the

22

Express Warranty Plaintiffs allege that the Class Vehicles have PSRs made of thin tempered glass with ceramic paint. (First Am. Compl. ¶¶ 48, 50, 52). To the extent that the Express Warranty Plaintiffs allege that the PSRs shattered as a result of the materials that the Defendants chose to use, they make a design defect claim under *Harduvel*. However, the Express Warranty Plaintiffs also describe the tempering process by saying, "if the compressive layer is compromised during the manufacturing process or otherwise, the entire piece of glass fails catastrophically, and often explosively." (*Id.* ¶ 49). Moreover, "[a] scratch or flaw created during the manufacturing process can result in progressive damage such that once the damage creeps into the compressive layer, the entire sunroof shatters." (*Id.* ¶ 51). The Court finds that these allegations may state a claim for a "defect[] in material or workmanship" under the terms of the NVLW.

The case law to which MBUSA cites does not prove otherwise. While *Pickens* involved similar claims related to PSRs, the case is distinguishable because the plaintiff there failed to allege any sort of manufacturing defect and relied only on a design defect theory. *Pickens v. Mercedes-Benz USA, LLC*, 2021 WL 5050289, at *2 (N.D. Ill. Nov. 1, 2021). Other cases to which MBUSA cites make manufacturing defect allegations, but only in a conclusory or off-handed way. *Benefiel v. Johnson & Johnson*, 2021 WL 8742892, at *2 (M.D. Fla. Jan. 14, 2021); *Haag v. Hyundai Motor Am.*, 294 F. Supp. 3d 102, 105 (W.D.N.Y. 2018); *Garcia v. Chrysler Grp. LLC*, 127 F. Supp. 3d 212, 227

(S.D.N.Y. 2015); *Rice v. Sunbeam Prods., Inc.*, 2013 WL 146270, at *12 (C.D. Cal. Jan. 7, 2013). By contrast, the Express Warranty Plaintiffs here make specific factual allegations about how the manufacturing process could have caused the defects in the Class Vehicles. (First Am. Compl. ¶¶ 49, 51). Finally, MBUSA points to several cases for the proposition that "[a]llegations that 'every' vehicle is 'defective' also show a design defect." (Defs.' Br. in Supp. of Mot. to Dismiss, at 12 n. 6). Assuming that to be true, it does not show that the Express Warranty Plaintiffs have not also alleged a manufacturing defect. *See, e.g.*, *Gregorio v. Ford Motor Co.*, 522 F. Supp. 3d 264, 288 (E.D. Mich. 2021) ("Plaintiffs are not required to commit to a single theory of the origin of the defect at this time. And just because Plaintiffs plead allegations involving a class of vehicles does not preclude the possibility of a manufacturing defect." (citations omitted)); *Johnson v. FCA US LLC*, 555 F. Supp. 3d 488, 500 (E.D. Mich. 2021) ("Indeed, it is logically possible that either the Panel Defect results from a flaw in the panel's design *or* that the panels were all badly built, even though well-patterned." (quotation marks and citation omitted)).

Since the Express Warranty Plaintiffs allege that the PSR defect "arises, at least in part, to manufacturing, materials, or workmanship, the Court cannot conclude at this stage of the litigation that it is exempt from the Warranty as a 'design defect.'" *Hadjian*, 2022 WL 3699603, at *10 (N.D. Ga. March 31, 2022) (citations omitted); *see also Johnson*, 555 F. Supp. 3d at 500 ("[W]here, as here, a party pleads facts consistent with a defect that could be

24

due to either poor design, or to poor materials and workmanship, the resolution of that question should await development of the factual record." (brackets, quotation marks, and citation omitted)). "Thus, while the Court agrees with the Defendants that MBUSA's warranties do not cover design defects, it cannot agree that the Plaintiffs' claim is necessarily one for design defect." *Callen*, 2020 WL 10090879, at *7.

### iii.    Reliance

The Court dismisses Plaintiff Phlegar's express warranty claim for failure to provide pre-suit notification. Thus, the Court does not reach the issue of whether Plaintiff Phlegar sufficiently alleged that she relied on the terms of the NVLW.

## D. Implied Warranty Claim

The Defendants seek dismissal of the Plaintiffs Bolling, Dedman, and Foster-Gittens's implied warranty claim. First, they argue that the Plaintiffs have failed to fulfill the necessary notice requirements. Second, they claim that the Plaintiff Bolling is not in privity with MBUSA. Finally, they assert that the Implied Warranty Plaintiffs' vehicles are not unfit for their ordinary purposes. The Court dismisses the Plaintiff Dedman's implied warranty claim but not the Plaintiffs Bolling and Foster-Gittens' claims.

### i.    Notice Requirements

The Court has already found that the Plaintiff Bolling met the notice requirement and that the Plaintiff Dedman did not. For the same reasons, the

25

Court finds that the Plaintiff Dedman's implied warranty claim should be dismissed on this basis and that the Plaintiff Bolling's should not. *See Harman v. Taurus Int'l Mfg., Inc.*, 586 F. Supp. 3d 1155, 1163 (M.D. Ala. 2022) ("There is no distinction between implied warranties and express warranties for purposes of the [notice] precondition." (citation omitted)); *In re Ford Motor Co. E-350 Van Prods. Liab. Litig. (No. II)*, 2010 WL 2813788, at *34 (D.N.J. July 9, 2010) ("As codified under Georgia law, as a prerequisite to an express or implied warranty claim, the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." (quotation marks and citation omitted)).

### ii.    Privity

The Defendants argue that the Plaintiff Bolling's implied warranty claim should be dismissed because she is not in privity with MBUSA. (Defs.' Br. in Supp. of Mot. to Dismiss, at 16). Under Alabama law,[8] "without privity of contract, there is no right of action against a manufacturer for direct economic loss." *Rhodes v. Gen. Motors Corp., Chevrolet Div.*, 621 So. 2d 945, 947 (Ala. 1993). The Plaintiff Bolling contends that she meets this privity requirement because she is a third-party beneficiary of the agreement between

---

[8] "A court sitting in diversity must apply the choice-of-law rules of its forum state—in this case, Georgia. Georgia follows the *lex loci contractus* doctrine of contract interpretation." *Chart Indus., Inc. v. Navigators Speciality Ins. Co.*, 2020 WL 13594949, at *2 (N.D. Ga. Aug. 3, 2020) (citations omitted). Since the Plaintiff bought her car in Birmingham, Alabama law applies. (First Am. Compl. ¶¶ 97-98).

26

MBUSA and the authorized dealers. (Pls.' Br. in Opp'n to Mot. to Dismiss, at 16-17). The Court agrees.

The Defendants claim that the Plaintiff Bolling is not a third-party beneficiary both because she has not sufficiently alleged an agreement by which she could be a beneficiary and because Alabama law considers a vehicle purchaser to be an incidental beneficiary of any such agreement. (Reply Br. in Supp. of Mot. to Dismiss, at 13). With respect to the allegations, the First Amended Complaint states "Plaintiffs and the Class Members are intended third-party beneficiaries of contracts between Mercedes and its dealers, franchisees, representatives, and agents." (First Am. Compl. ¶ 211). Moreover, "each warranty provides 'to the original and each subsequent owner of a new Mercedes-Benz vehicle' that any authorized Mercedes-Benz dealer/center 'will make any repairs or replacements necessary to correct defects in material or workmanship arising during the warranty period.'" (*Id.* ¶ 90). Viewing these allegations in the light most favorable to the Plaintiff Bolling, a reasonable inference can be made that there is an agreement between the Defendants and the authorized dealers so that the latter will provide services to correct defects within the warranty.

Still, the Defendants insist that the Plaintiff Bolling's third-party beneficiary argument is foreclosed by *McGowan v. Chrysler Corp.*, 631 So. 2d 842, 848 (Ala. 1993). There, the Supreme Court of Alabama found that the plaintiff was not a third-party beneficiary of an agreement between Chrysler

and a dealer. *Id.* However, this finding was not absolute and instead depended

on the facts of the case:

> The primary purpose of the contract was to promote Chrysler's
> reputation and that of its dealers, by ensuring that purchasers of
> Chrysler cars would receive warranty service and quality
> replacement parts for their cars at Chrysler dealerships.
> McGowan never received service on his 1987 Fifth Avenue at
> Heritage because that dealership went out of business soon after
> he bought the car. He brought the car to other dealerships on only
> two occasions, and he chose to have the majority of the repairs
> done to the car at local non-Chrysler garages or at his own service
> station. Under Alabama law, he had no valid third-party contract
> claim under the facts of this case, and we therefore affirm the
> summary judgment as to the contract claim.

*Id.* The case is not—as the Defendants claim it to be—the wholesale rejection

of implied warranty claims against upstream entities by vehicle purchasers.

To the contrary, there are several recent cases with facts similar to this

one that have found that the plaintiffs had sufficiently shown that they were

third-party beneficiaries. The Eleventh Circuit has said that under Alabama

law, "a court may look at the surrounding circumstances in determining

whether an end user is a third-party beneficiary. One of the circumstances a

court may consider is the foreseeability of harm to end users." *Lisk v. Lumber

One Wood Preserving, LLC*, 792 F.3d 1331, 1339 (11th Cir. 2015) (brackets,

quotation marks, and citations omitted). Based on that, the court held that

there was sufficient support for a third-party-beneficiary claim because

"Lumber One knew its wood was bound for end users and that they would

suffer substantial harm if the wood did not conform to the warranty." *Id.*

28

Relying on *Lisk*, the court in *Freeman v. NIBCO, Inc.* found that the plaintiffs stated a valid implied warranty claim against a manufacturer of plumbing tubes and fittings even though the plaintiffs bought their house with the alleged defects from the homebuilders. *Freeman v. NIBCO, Inc.*, 526 F. Supp. 3d 1112, 1116, 1332 (N.D. Ala. 2020). It did so "because of the foreseeability of harm to those occupants from defective plumbing." *Id.* at 1129. "After all, the homeowners—not the homebuilders—would use the plumbing for the 10- or 25-year warranty term and be the ones to suffer harm from any defects." *Id.* at 1129-30.

Finally, and most similarly, the court in *Hurry v. Gen. Motors, LLC*, held that the plaintiffs plausibly alleged privity with General Motors for implied warranty claims regarding vehicles purchased at independent authorized dealers. *Hurry v. Gen. Motors, LLC*, 622 F. Supp. 3d 1132, 1148 (M.D. Ala. 2022). "It is reasonable to infer that GM and the independent dealers intended for the eventual users of the Class Vehicles—the Plaintiffs— to benefit from the implied warranty of merchantability because of the foreseeability of harm to those users from vehicles which are defective, unmerchantable, or both." *Id.* (citation omitted).

Here, the same reasoning applies. It is reasonable to infer Mercedes-Benz knew that the consumers—not the dealers—would be the ones that ultimately suffer from any defects. Moreover, the factual circumstances present in *McGowan* do not exist here. The authorized dealership where the

29

Plaintiff Bolling bought her vehicle, Mercedes-Benz of Birmingham, is still in business, and she sought repairs from that same dealership for the defect at issue here. *Compare* (First Am. Compl. ¶¶ 97-98, 103-06) *with McGowan*, 631 So. 2d at 848. As such, viewing the facts in the light most favorable to the non-moving party, the Court finds that the Plaintiff Bolling has plausibly alleged that she is a third-party beneficiary and satisfies the privity requirement of her implied warranty claim.

### iii.   Unfitness

The Defendants' final challenge to the Implied Warranty Plaintiffs' claim is that the Class Vehicles are not unmerchantable. (Defs.' Br. in Supp. of Mot. to Dismiss, at 17). They assert that because the shattering of PSRs is just a periodic problem that did not arise until after the vehicles were driven without any issues for long periods of time. (*Id.*). The Implied Warranty Plaintiffs claim that the alleged defect renders the Class Vehicles unmerchantable because it affects the safety and reliability of the Class Vehicles. (Pls.' Br. in Opp'n to Mot. to Dismiss, at 17-19). The Court finds that the Implied Warranty Plaintiffs have adequately pled that the Class Vehicles are unmerchantable.

For goods to be merchantable in Alabama and Georgia, they must be "fit for the ordinary purposes for which such goods are used." Ala. Code § 7-2-314(2)(c); O.C.G.A. § 11-2-314(c). The ordinary purpose of a vehicle is to provide safe and reliable transportation. *Nalley v. Gen. Motors LLC*, 2022 WL

18459646, at *4 (N.D. Ga. Aug. 30, 2022) (citation omitted); *see also Hurry*, 622 F. Supp. 3d at 1148-49. The Implied Warranty Plaintiffs allege that when PSRs shatter, they suddenly make an extremely loud noise that sounds like a shotgun blast. (First Am. Compl. ¶¶ 65-66, 74, 101, 139). The blasting sound then is followed by shards of glass falling on the passengers and cutting them. (*Id.* ¶ 74). Furthermore, if this happens while traveling at highway speeds, the wind coming into the interior is so strong that it causes the car to shake as if it has a flat tire. (*Id.* ¶ 101). After the PSRs shattered, the Implied Warranty Plaintiffs allege, they had to have their vehicles towed to the dealership because they were undrivable. (*Id.* ¶¶ 101, 141). Based on these facts, the Implied Warranty Plaintiffs allege that the PSR defect renders the Class Vehicles unfit for their ordinary purpose. (*Id.* ¶ 210).

The Defendants have offered three cases to show that the shattering PSRs do not inhibit the ability of the Class Vehicles to fit their ordinary purposes. First, they point to *Elfaridi v. Mercedes-Benz USA, LLC*, for the proposition that a one-time issue that is replaced does not render a vehicle unfit. (Defs.' Br. in Supp. of Mot. to Dismiss, at 17-18; Reply Br. in Supp. of Mot. to Dismiss, at 13-14). While the court there did find that the vehicles were not unfit because of PSRs breaking once over several years of use, the facts alleged in that case are different than the ones here. *Elfaridi v. Mercedes-Benz USA, LLC*, 2018 WL 4071155, at *10 (E.D. Mo. Aug. 27, 2018). Most significantly, the PSRs there were alleged to have "cracked" and there appears

31

to have been no allegations of loud noises, glass showering down on passengers, or vehicles shuddering. *Id.* at *3. Because of these factual distinctions that implicate the safety and reliability of the vehicles, the Court will not follow *Elfaridi*.

The other two cases that the Defendants cite are also distinguishable. *Sheris v. Nissan N. Am., Inc.* involved allegedly defective front brake assemblies. *Sheris v. Nissan N. Am., Inc.*, 2008 WL 2354908, at *5-6 (D.N.J. June 3, 2008). The court found that because the plaintiff was able to use his brake pads and rotors for over 20,000 miles and about two years before needing a replacement, his vehicle was not unmerchantable. *Id.* at *5. As with *Elfaridi*, the factual allegations here are significantly different. "Unlike wear and tear items on a vehicle like brake pads, tires, or batteries, sunroofs are expected to last the life of the vehicle, regardless of mileage or time." (First Am. Compl. ¶ 69). So, while a vehicle is ordinarily expected to need its brake pads to be regularly inspected and sometimes replaced, the same is not true for PSRs. As for *Soto v. CarMax Auto Superstores, Inc.*, the court there granted a motion for summary judgment because the plaintiff "failed to present evidence showing that the Blazer was unmerchantable." *Soto v. CarMax Auto Superstores, Inc.*, 271 Ga. App. 813, 815 (2005). Here, the case is at the pleading stage and the Plaintiffs are therefore not required to provide evidence to survive the Motion to Dismiss. Based on the above, the Court finds that the Implied Warranty Plaintiffs have sufficiently alleged that the Class Vehicles were

unmerchantable.

### E.  Magnuson-Moss Warranty Act Claim

The Plaintiffs Bolling, Dedman, Foster-Gittens, and Phlegar assert claim against the Defendants for violating the Magnuson-Moss Warranty Act ("MMWA"). (Compl. ¶¶ 225-243). Since the Plaintiffs Dedman and Phlegar do not adequately state a state-law warranty claim, they cannot state an MMWA claim. *See Fedrick v. Mercedes-Benz USA, LLC*, 366 F. Supp. 2d 1190, 1200 n. 14 (N.D. Ga. 2005) ("The [MMWA] does not provide an independent cause of action for state law claims, only additional damages for breaches of warranty under state law." (citation omitted)). Furthermore, the Defendants argue that the MMWA Plaintiffs' claim fails because there are not one hundred named plaintiffs and because they did not provide notice to the Defendants that they were acting on behalf of a class. (Defs.' Br. in Supp. of Mot. to Dismiss, at 18-19).

With respect to the number of named plaintiffs, the MMWA does not allow lawsuits in federal district courts "if the action is brought as a class action, and the number of named plaintiffs is less than one hundred." 15 U.S.C. § 2310(d)(3)(C). The MMWA Plaintiffs note that there is a circuit split as to whether this numerosity requirement has been superseded by the Class Action Fairness Act ("CAFA") and argue that it has. (Pls.' Br. in Opp'n to Mot. to Dismiss, at 19-20). The Eleventh Circuit has not considered this issue yet. *Nuwer v. FCA US LLC*, 343 F.R.D. 638, 648 (S.D. Fla. 2023).

However, many district courts in this circuit have done so and concluded that CAFA does not convey a clear Congressional intent to override the plain text of the MMWA. *See, e.g.*, *id.*; *Riley v. Gen. Motors, LLC*, 2023 WL 3241745, at *2 (M.D. Fla. March 28, 2023) (compiling cases), *appeal docketed*, No. 23-11374 (11th Cir. Apr. 26, 2023). The Court finds the reasoning in these cases persuasive. Since there are only six named plaintiffs here, the MMWA Plaintiffs have failed to meet this jurisdictional bar. Even so, the MMWA Plaintiffs contend that the Court has diversity and supplemental jurisdiction over this claim. (Pls.' Br. in Opp'n to Mot. to Dismiss, at 20). Yet, this contention is conclusory. The MMWA Plaintiffs do not explain how they meet the requirements for the exercise of either type of jurisdiction or how meeting those requirements gets around the express limitation under the MMWA that "[n]o claim shall be cognizable… if the action is brought as a class action, and the number of named plaintiffs is less than one hundred." 15 U.S.C. § 2310(d)(3). The Court therefore finds that the MMWA Plaintiffs have failed to state their MMWA claim.[9]

---

[9] Even if the MMWA Plaintiffs can get around the one-hundred-named-plaintiffs rule, they failed to respond to the Defendants' argument that the MMWA Plaintiffs did not provide notice to the Defendants that they were acting on behalf of a class, as required by 15 U.S. C. § 2310(e). (Pls.' Br. in Opp'n to Mot. to Dismiss, at 19-20). "[A] party's failure to respond to any portion or claim in a motion indicates such portion, claim or defense is unopposed." *Jones v. Bank of Am., N.A.*, 564 F. App'x. 432, 434 (11th Cir. 2014) (citation omitted). This failure provides an additional and independent reason to grant the motion to dismiss with respect to Count III.

## F. Fraudulent Concealment Claim

The Plaintiffs Bolling, Hale, Dedman, Foster-Gittens, and Phlegar bring a claim of fraudulent concealment against the Defendants. The Defendants seek dismissal on various grounds. Before the Court reaches those grounds, however, it must first resolve the dispute about what law applies as to each Plaintiff.

### i.   Choice of Law

The Fraudulent Concealment Plaintiffs contend that Georgia law applies to all of them while the Defendants assert that the law of each Plaintiff's state of residence applies. The Court agrees with the Plaintiffs. Since this is a diversity case, the Court looks to state choice-of-law rules to determine the applicable substantive law. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941). Georgia follows the traditional *lex loci contractus* and *lex loci delecti* choice-of-law rules. *Rayle Tech, Inc. v. DEKALB Swine Breeders, Inc.*, 133 F.3d 1405, 1409 (11th Cir. 1998). "Under these rules, respectively, contract disputes are governed by the substantive law of the state where the contract was made and tort disputes are governed by the substantive law of the state where the tort was committed." *Monopoli v. Mercedes-Benz USA, LLC*, 2022 WL 409484, at *4 (N.D. Ga. Feb. 10, 2022)) (quotation marks and citation omitted). However, under Georgia law, "it is clear that the application of another jurisdiction's laws is limited to statutes and decisions construing those statutes." *Frank Briscoe Co. Inc. v. Ga. Sprinkler Co., Inc.*, 713 F.2d 1500,

35

1503 (11th Cir. 1983) (citations omitted). "When no statute is involved, Georgia courts apply the common law as developed in Georgia rather than foreign case law." *Id.* (citations omitted). The Supreme Court of Georgia has found that when "no statute of the foreign State is pleaded, it will be presumed that the common law prevails in such State." *Avnet, Inc. v. Wyle Lab'ys, Inc.*, 263 Ga. 615, 620 (1993) (citation omitted). Here, the Complaint does not plead a statute of another state with respect to the fraudulent concealment claim, and the Defendants do not provide any basis for overcoming the presumption that Georgia common law applies. The only case that the Defendants offer to show that foreign law applies is *Callen*, 2020 WL 10090879, at *14. (Reply Br. in Supp. of Mot. to Dismiss, at 18). However, that case "did not address the issue of whether Georgia common-law should be applied." *Monopoli*, 2022 WL 409484, at *5 (citations omitted). Accordingly, the Court finds that Georgia common law applies to all of the Fraudulent Concealment Plaintiffs.

   ii.   **Concealment**

Under Georgia law, a fraudulent concealment claim has five elements: "(1) a false representation or omission of a material fact; (2) scienter; (3) intention to induce the party claiming fraud to act or refrain from acting; (4) justifiable reliance; and (5) damages." *Meyer v. Waite*, 270 Ga. App. 255, 257-58 (2004) (citation omitted). "In federal court, fraud allegations must be pleaded with the particularity required by Rule 9(b)." *Callen*, 2020 WL 10090879, at *14. The Defendants' first proffered ground for dismissing this

36

count is that the First Amended Complaint did not allege concealment with sufficient particularity. However, "Plaintiffs plead a fraud-by-omission case, and in cases where the fraud alleged is the fraudulent omission of information within the exclusive control of the Defendant, the [Rule 9(b)] standard is relaxed." *Kearney v. Bayerische Motoren Werke Aktiengesellschaft*, 2018 WL 4144683, at *10 (D.N.J. Aug. 29, 2018) (quotation marks and citation omitted); *see also Monopoli*, 2022 WL 409484 at *10 ("By the very nature of fraudulent concealment, plaintiffs cannot be expected to point to the time, place, and precise substance of what should have been disclosed."). Because of the nature of the Fraudulent Concealment Plaintiffs' claim, "it is enough for plaintiffs to allege that a fact was material and that it could have, and should have, been disclosed prior to the time plaintiffs acted upon the omission." *Monopoli*, 2022 WL 409484 at *10 (citations omitted). The First Amended Complaint states that the Defendants had exclusive control over information about the PSR defect and never told the Plaintiffs about it. (First Am. Compl. ¶ 94, 248). Thus, if the First Amended Complaint adequately alleges knowledge, a duty to disclose, and justifiable reliance, then the Fraudulent Concealment Plaintiffs have adequately alleged concealment here.

### iii. Scienter

The Court thus turns to the Defendants' argument that the Fraudulent Concealment Plaintiffs did not properly plead scienter. Even under the heightened pleading standard, "[m]alice, intent, knowledge, and other

37

conditions of a person's mind may be alleged generally." Fed. R. Civ. Pro. 9(b).
The Fraudulent Concealment Plaintiffs contend they have met this standard
by pointing to eight sources of the Defendants' knowledge:

> (1) the 2006 NHTSA investigation;
> (2) Mercedes' knowledge of multiple consumer complaints
> submitted to NHTSA, some of which are excerpted in the FAC;
> (3) pre-release testing data;
> (4) testing data after receiving consumer complaints;
> (5) warranty claims and data;
> (6) data from inordinately high volumes of replacement part sales;
> (7) testing by the Korea Automobile Testing & Research Institute;
> and
> (8) employee acknowledgement statements.

(Pls.' Br. in Opp'n to Mot. to Dismiss, at 23) (footnote omitted). The Defendants
assert that these are insufficient. They argue that (1) the NHTSA investigation
involved other car companies and did not find that there was a defect in those
vehicles, (2) customer complaints do not establish knowledge of a class-wide
defect since windows can break for many different reasons, and (3) the other
sources were pled in a conclusory manner that does not explain how they would
have alerted the Defendants to a systemic defect. (Defs.' Br. in Supp. of Mot.
to Dismiss, at 22-23; Reply Br. in Supp. of Mot. to Dismiss, at 16). The Court
finds that the Fraudulent Concealment Plaintiffs have adequately alleged
scienter.

   As an initial matter, the Court agrees with the Defendants that the
NHTSA investigation report does not support an inference that the Defendants
knew of the alleged defect. First, the investigation report did not conclude there

was a defect: "Through analysis of the information obtained to date, [the NHTSA's Office of Defects Investigation] has not identified sufficient evidence of a safety-related defect in the subject sunroof." NAT'L HIGHWAY TRAFFIC SAFETY ADMIN., U.S. DEP'T OF TRANSP., EA 14-002, ENGINEERING ANALYSIS CLOSING REPORT, 6 (2021). Moreover, the investigation was focused on 2011-2013 Kia Sorento vehicles rather than the Class Vehicles. The Fraudulent Concealment Plaintiffs fail to explain how an investigation that did not find a defect in the PSRs and centered around other types of vehicles shows that the Defendants knew about a defect in the Class vehicles.

The Court also finds that the testing by the Korea Automobile Testing & Research Institute ("KATRI") does not support an inference that the Defendants knew about the defect. The First Amended Complaint alleges that KATRI found that the enamel used for PSRs in Mercedes vehicles makes the glass less durable. (First Am. Compl. ¶ 55). Yet, there is no allegation indicating that the Defendants had reason to know about this testing. The Court cannot reasonably infer knowledge of the defect based on a report that the Defendants may not have seen. The Court will therefore disregard this report for present purposes.

Even without considering the NHTSA investigation or KATRI report, the Fraudulent Concealment Plaintiffs have stated sufficient facts to support a reasonable inference that the Defendants knew of the alleged defect. For starters, the First Amended Complaint alleges that the Defendants conducted

39

pre-sale durability testing on its sunroofs that would have revealed the alleged defect. (First Am. Compl. ¶ 14). This allegation supports "the reasonable inference that the Defendants did, in fact, conduct various tests that could have revealed the existence of the defect." *Callen*, 2020 WL 10090879, at *16.

When this is added to the Fraudulent Concealment Plaintiffs' other allegations, it is sufficient to support an inference of knowledge at this stage of the litigation. The Fraudulent Concealment Plaintiffs allege that there have been consumer complaints on the NHTSA website for years reporting spontaneously shattering PSRs with Mercedes-Benz vehicles and that "Mercedes has a regular practice of monitoring NHTSA's website for emerging problems with its vehicles." (First Am. Compl. ¶¶ 62, 65-66). Furthermore, the dealership representatives allegedly stated that shattering PSRs were not an uncommon occurrence, and the Defendants' customer relations department monitors repair requests at dealerships, which are only reimbursed for repairs if they provide detailed information about the problem addressed. (*Id.* ¶¶ 9, 15-16, 104, 142). "Courts have found similar knowledge-related allegations sufficient." *Kearney*, 2018 WL 4144683, at *11 (D.N.J. Aug. 29, 2018) (citations omitted) (finding knowledge sufficiently alleged when the plaintiffs rely on "pre-production testing, pre-production design or failure mode analysis, ... early consumer complaints made to Defendants' network of exclusive dealers, aggregate warranty data compiled from those dealers, consumer complaints to dealers and NHTSA, and testing performed in response to consumer

40

complaints"). Overall, viewing the facts in the light most favorable to the Fraudulent Concealment Plaintiffs, the Court finds that the First Amended Complaint plausibly alleges knowledge, even if each individual piece may not by itself. *See Pinon*, 2019 WL 11648560, at \*24 (collecting cases).

### iv.   Duty to Disclose

The Defendants also contend that the Fraudulent Concealment Count should be dismissed because they did not have a duty to disclose the defect to the Fraudulent Concealment Plaintiffs. (Defs.' Br. in Supp. of Mot. to Dismiss, at 23-24). Under Georgia law, a duty to disclose "may arise from the confidential relations of the parties or from the particular circumstances of the case." O.C.G.A. § 23-2-53. Thus, a duty to disclose may exist even without a confidential relationship if the particular circumstances of the case create the duty. *See Monopoli*, 2022 WL 409484, at \*11-12. [10] "The particular circumstances of the case may give rise to an obligation to communicate where there is a concealment of 'intrinsic qualities of the article which the other party by the exercise of ordinary prudence and caution could not discover.'" *McCabe*, 948 F. Supp. 2d at 1368 (quoting *Rivers v. BMW of N. Am., Inc.*, 214 Ga. App.

---

[10] For this reason, *Lucky Cap. Mgmt., LLC v. Miller & Martin, PLLC*, 741 F. App'x. 612 (11th Cir. 2018) is not binding in this case. There, the court held that no duty to disclose arises out of American Bar Association Model Rule of Professional Conduct 1.13. *Id.* at 618-19. The court then dismissed the fraudulent concealment claim because the plaintiff did not allege any other basis for the duty to disclose. *Id.* at 619.

880, 883-84 (1994)).[11]

The Fraudulent Concealment Plaintiffs have alleged (1) that the Defendants knew about the defect, (2) that they failed to disclose the defect to consumers, (3) that consumers could not discover the defect through reasonable diligence, and (4) that the Defendants had a pretextual pattern and practice of systematically concluding that the PSRs shattered because of an outside force rather than the alleged defect. (First Am. Compl. ¶¶ 14, 18, 108, 171). The Defendants argue that these allegations are insufficient because they do not show active concealment, which they assert is necessary for a claim of fraudulent concealment. (Defs.' Br. in Supp. of Mot. to Dismiss, at 24; Reply Br. in Supp. of Mot. to Dismiss, at 17-18). However, the Georgia cases to which the Defendants cite for that requirement are not on point. They discuss what must be shown to demonstrate concealment of a cause of action and to thus toll the statute of limitations; they do not discuss what is necessary to allege a duty to disclose. *Robertson v. Robertson*, 333 Ga. App. 864, 869-70 (2015); *Fed. Ins. Co. v. Westside Supply Co.*, 264 Ga. App. 240, 243-44 (2003); *Feinour v. Ricker Co.*, 255 Ga. App. 651, 655 (2002). "At this stage, it suffices that Plaintiffs have plausibly alleged that Mercedes concealed an intrinsic quality of the Class Vehicles that Plaintiffs and consumers generally could not have discovered in

---

[11] Several of the Defendants' arguments are based on the laws of other states. Since the Court has already ruled that Georgia law applies to all of the Fraudulent Concealment Plaintiffs, those arguments are without merit. *See supra* Section III.F.i.

the exercise of reasonable care." *Monopoli*, 2022 WL 409484, at *12 (quotation marks and citations omitted). The Fraudulent Concealment Plaintiffs have done so here.

### v.   Justifiable Reliance

The Defendants assert that the Fraudulent Concealment Plaintiffs have not adequately alleged justifiable reliance because they have not provided any allegedly misleading material that they relied upon when deciding to purchase the Class Vehicles. (Defs.' Br. in Supp. of Mot. to Dismiss, at 24-26). To the extent that the Defendants' arguments rely on cases decided under other states' laws, they are of limited value since Georgia law applies to all of the Fraudulent Concealment Plaintiffs. Moreover, the Georgia cases to which the Defendants cite apply the fraudulent misrepresentation standard. *Burgess v. Religious Tech. Ctr., Inc.*, 600 F. App'x 657, 663 (11th Cir. 2015); *Brazil v. Janssen Rsch. & Dev. LLC*, 249 F. Supp. 3d 1321, 1339 (N.D. Ga. 2016). "Significantly, however, allegations sufficient to show justifiable reliance on an omission differ from those sufficient to show reliance on a misrepresentation. By the very nature of fraudulent concealment, plaintiffs cannot be expected to point to the time, place, and precise substance of what should have been disclosed." *Monopoli*, 2022 WL 409484, at *10. The Fraudulent Concealment Plaintiffs have alleged that (1) the Defendants knew about the defect, (2) the Defendants failed to disclose the defect, and (3) the Fraudulent Concealment Plaintiffs would not have paid as much for the Class Vehicles or would not have

purchased them at all. (First Am. Compl. ¶¶ 9, 12, 17, 83-84, 249-52, 254). The Court finds that the Fraudulent Concealment Plaintiffs have sufficiently alleged justifiable reliance. *See, e.g.*, *Amin*, 301 F. Supp. 3d at 1296; *Monopoli*, 2022 WL 409484, at *10 ("Here, Plaintiffs allege that Mercedes knew about the defective AHR, that Mercedes failed to disclose this defect to its consumers prior to purchasing, and '[h]ad Mercedes disclosed the AHR defect, [Plaintiffs] would not have purchased [their] vehicle[s], or would not have paid as much for [them].' This is sufficient to allege justifiable reliance for purposes of a fraudulent concealment claim." (footnote omitted)).

### vi. Economic Loss Doctrine

Finally, the Defendants argue that the economic loss doctrine bars the Plaintiffs Bolling, Hale, and Phlegar's fraudulent concealment claim since they do not allege any personal injury or damage. (Defs.' Br. in Supp. of Mot. to Dismiss, at 26-27). "The economic loss rule provides that absent personal injury or damage to property other than to the allegedly defective product itself an action in negligence does not lie and any such cause of action may be brought only as a contract warranty action." *Advanced Drainage Sys., Inc. v. Lowman*, 210 Ga. App. 731, 733 (1993) (citation omitted). However, "[t]he economic loss rule is inapplicable in the presence of passive concealment or fraud." *Holloman v. D.R. Horton, Inc.*, 241 Ga. App. 141, 148 (1999). None of the cases to which the Defendants cite apply Georgia law. *See Harman*, 586 F. Supp. 3d at 1165-66 (applying Alabama and Florida law); *Stewart v. Electrolux*

*Home Prods., Inc.*, 304 F. Supp. 3d 894, 902 (E.D. Cal. 2018) (applying California law); *In re Atlas Roofing Corp. Chalet Shingle Prods. Liab. Litig.*, 2015 WL 3796456, at *3 (N.D. Ga. June 18, 2015) (applying Florida law); *Wallace v. SunTrust Mortg., Inc.*, 974 F. Supp. 2d 1358, 1369-70 (S.D. Ala. 2013) (applying Alabama law). The Court therefore finds that the economic loss rule does not bar the Plaintiffs Bolling, Hale, and Phlegar's claim.

### G. Unjust Enrichment Claim

The Plaintiffs Bolling, Hale, Dedman, Foster-Gittens, and Phlegar assert unjust enrichment claim in the alternative against the Defendants. In response, the Defendants move to dismiss the claim because the NVLW governs the dispute. As an initial matter, the Court notes that the Plaintiffs Hale, Dedman, and Phlegar either did not raise an express warranty claim or had it dismissed already. The Defendants themselves concede that if there is no active express warranty claim, the unjust enrichment claim can proceed. (Reply Br. in Supp. of Mot. to Dismiss, at 20) ("In *Amin*, [301 F. Supp. 3d at 1296,] the breach of express warranty claim had been dismissed, thus allowing the plaintiff in that case to proceed under an unjust enrichment theory."). Thus, the question of whether the NVLW precludes the unjust enrichment claim applies only to the Plaintiffs Bolling and Foster-Gittens. Georgia law applies to each of these Plaintiffs for the same reasons Georgia law applied to them for their fraudulent concealment claim. *See supra* Section III.F.i.

"[T]he doctrine of unjust enrichment applies in the absence of a written contract between parties; where such a contract exists, however, it is the contract that governs the dispute and neither party can rely on unjust enrichment." *Peterson v. Aaron's, Inc.*, 2015 WL 5479877, at *2 (N.D. Ga. Sept. 16, 2015) (citation omitted). "Typically a party may plead unjust enrichment as an alternative to a breach of contract claim, even though it may not recover under both theories." *Techjet Innovations Corp. v. Benjelloun*, 203 F. Supp. 3d 1219, 1234 (N.D. Ga. 2016) (citation omitted). Notwithstanding that, "courts have held that a plaintiff may not plead an unjust enrichment claim in the alternative to a claim for breach of contract when it is undisputed (or when the court has found) that a valid contract exists." *Clark's v. Aaron's, Inc.*, 914 F. Supp. 2d 1301, 1310 (N.D. Ga. 2012) (citations omitted). The Plaintiffs Bolling and Foster-Gittens do not contest the existence of a valid contract. "To the contrary, their breach of express warranty claims are necessarily predicated on the existence of valid and enforceable contracts between the parties." *Callen*, 2020 WL 10090879, at *13. As such, the Court finds that the Plaintiffs Bolling and Foster-Gittens cannot state a claim of unjust enrichment in the alternative.

## H. State Law Claims

### i.    Alabama Deceptive Trade Practices Act ("ADTPA") Claim

The Plaintiffs Bolling and Hale raise claim against the Defendants under the ADTPA. The Defendants argue their claim should be dismissed for

two reasons. First, they argue that the ADTPA claim should fail because the Plaintiffs have not properly alleged that the Defendants knowingly engaged in deceptive conduct. (Defs.' Br. in Supp. of Mot. to Dismiss, at 29; Reply Br. in Supp. of Mot. to Dismiss, at 20-21). Second, the Defendants state that the Plaintiffs Bolling and Hale "cannot plead a fraud claim at the same time" as an ADTPA claim. (Defs.' Br. in Supp. of Mot. to Dismiss, at 29-30). The Court does not find either of these arguments to be persuasive at this stage.

Starting with the Defendants' first argument, the ADTPA prohibits in relevant part "[c]ausing confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services," "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another," and "[e]ngaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce." Ala. Code § 8-19-5.[12] "A plaintiff may allege

_____

[12] The Defendants contend that the "Plaintiffs' ADTPA claims require the same elements as plaintiffs' fraudulent concealment claims." (Defs.' Br. in Supp. of Mot. to Dismiss, at 29). However, the authority to which they cite does not support that claim. Moreover, to the extent that they do have the same elements, those elements do not always appear to be applied the same way. *Compare Cook's Pest Control, Inc. v. Rebar*, 28 So. 3d 716, 726 (Ala. 2009) ("Even if Duggan should have discovered an active termite infestation during his inspection, unless he actually did discover it, a claim of fraudulent suppression will not lie.") *with* Ala. Code § 8-19-3(9) (defining "knowingly" for the purposes of the ADTPA to include "[e]ither actual awareness or such awareness as a reasonable person should have considering all the surrounding circumstances."). The Court will thus only consider cases applying the ADTPA for the purposes of this claim.

an ADTPA claim based on concealment, suppression, or omission, so long as he or she can demonstrate some knowledge of false or deceptive conduct on the part of the wrongdoer." *Hurry*, 622 F. Supp. 3d at 1157 (quotation marks and citation omitted). Under the ADTPA, "knowledge" is defined to include "[e]ither actual awareness or such awareness as a reasonable person should have considering all the surrounding circumstances." Ala. Code § 8-19-3(9). As explained above, the First Amended Complaint plausibly alleges that the Defendants knew or should have known about the alleged defect. *See supra* Section III.F.iii.

The cases to which the Defendants cite do not change that conclusion. In *Strickland v. Kafko Mfg., Inc.*, 512 So. 2d 714, 718 (Ala. 1987), the Supreme Court of Alabama affirmed a directed verdict against an ADTPA plaintiff because at trial there was "no evidence that Kafko knew it was failing to ship goods for which it had been paid" and no evidence to "support a finding that Kafko was paid for a pool." Similarly, the opinion in *Lynn v. Fort McClellan Credit Union*, 2013 WL 5707372, at *7 (N.D. Ala. Oct. 21, 2013) was a memorandum of decision following a bench trial in which the plaintiff did not "show any intent by Family Nissan to deceive him, or that he was in any way deceived." Since both of these decisions were rendered based on a lack of evidence presented at trial, they have limited application at the pleading stage where allegations in the complaint are to be taken as true. The Court therefore finds that the Plaintiffs Bolling and Hale have properly pled that the

48

Defendants knowingly engaged in deceptive conduct for the reasons explained above. *See supra* Section III.F.

> Turning to the Defendants' second argument, the ADTPA states that:
>
> The civil remedies provided herein and the civil remedies available at common law, by statute or otherwise, for fraud, misrepresentation, deceit, suppression of material facts or fraudulent concealment are mutually exclusive. An election to pursue the civil remedies prescribed in this chapter shall exclude and be a surrender of all other rights and remedies available at common law, by statute or otherwise, for fraud, misrepresentation, deceit, suppression of material facts or fraudulent concealment arising out of any act, occurrence or transaction actionable under this chapter.

Ala. Code § 8-19-15(a). The Defendants argue that this provision requires dismissal of either the Plaintiffs Bolling and Hale's ADTPA claim or their fraudulent concealment claim. (Defs.' Br. in Supp. of Mot. to Dismiss, at 29-30). The ADTPA Plaintiffs assert that they can plead their ADTPA claim and fraudulent concealment claim in the alternative under Fed. R. Civ. P. 8. (Pls.' Br. in Opp'n to Mot. to Dismiss, at 29-30).

There is a substantial conflict in the case law as to whether ADTPA plaintiffs must make "an election" to pursue a common law claim or ADTPA claim at the pleading stage or whether they may wait until later in the litigation to decide. *See Pinon*, 2019 WL 11648560, at *25 (compiling cases for each position). The Court finds that the Plaintiffs Bolling and Hale may plead their ADTPA claim in the alternative to their fraudulent concealment claim. "First, although the plain language of the savings clause requires a plaintiff to

elect one or the other remedy, it does not specify when in the proceedings the plaintiff must do so." *In re Gen. Motors LLC Ignition Switch Litig.*, 257 F. Supp. 3d 372, 405 (S.D.N.Y. 2017). Furthermore, the Court is not convinced by the Defendants' argument that allowing the ADTPA Plaintiffs to plead in the alternative will enlarge their substantive rights. *See id.* ("Allowing Glenn to recover on her ADPTA claim and her common law fraud claim would obviously enlarge her substantive rights contrary to the language of the Act's savings clause. But the right to plead alternative, or even inconsistent, claims is not a matter of substance; it is a quintessential matter of procedure."). For these reasons, the Court agrees with "the strong plurality of cases on point" by "following the Rule 8 theme of allowing alternative, even conflicting, claims to be pled at this stage." *Boddison v. Gen. Motors LLC*, 2021 WL 2685770, at *3 (M.D. Fla. June 30, 2021). As such, the Plaintiffs Bolling and Hale's ADTPA claim will not be dismissed.

ii.   **Georgia Fair Business Practices Act ("GFBPA") and Georgia Uniform Deceptive Trade Practices Act ("GUDTPA") Claim**

The Plaintiffs Dedman and Foster-Gittens raise a claim under both the GFBPA and GUDTPA. The Defendants assert that their GFBPA claim "fail[s] for the same reasons the fraudulent concealment claims fail," namely that the Plaintiffs Dedman and Foster-Gittens have made only conclusory allegations that they justifiably relied on any alleged misrepresentations. (Defs.' Br. in Supp. of Mot. to Dismiss, at 30). The Plaintiffs Dedman and Foster-Gittens

50

state that they reviewed written materials and spoke to a dealer representative before purchasing their vehicles. (First Am. Compl. ¶¶ 124, 137). They further state that none of the sources provided disclosed the alleged defect and that they would not have purchased the vehicle if they had known about the defect. (*Id.* ¶¶ 124-25, 137-38). For the reasons explained above, this is sufficient to plead justified reliance. *See supra* Section III.F.v.

As for the GUDTPA claim, the Defendants argue they should be dismissed because the plaintiffs cannot show a likelihood of future harm. (Defs.' Br. in Supp. of Mot. to Dismiss, at 30-31). GUDTPA provides that "[a] person likely to be damaged by a deceptive trade practice of another may be granted an injunction against it under the principles of equity and on terms that the court considers reasonable." O.C.G.A. § 10-1-373. To get such an injunction, a plaintiff must allege a likelihood of future harm by the deceptive trade practice. *Amin*, 301 F. Supp. at 1293 (citations omitted). The Defendants point to *Callen*, 2021 WL 4523436, at *6, to support their claim that the Plaintiffs do not meet this standard. *Callen* involved allegedly defective interior wood trim that the defendants refused to repair or replace. *Id.* The court dismissed the GUDTPA claim because the plaintiff "has not alleged that she intends to purchase a Class Vehicle in the future or that she ever has paid, or intends to pay, to replace her trim" and she therefore lacked an allegation of future harm. *Id.*

51

By contrast, here the Plaintiffs Dedman and Foster-Gittens allege that in order to restore their vehicles, they paid to have their PSRs replaced with the same allegedly defective PSR that might shatter again in the future. (First Am. Compl. ¶¶ 131-32, 141, 144, 293). These allegations are sufficient to find a likelihood of future harm. *See, e.g.*, *Nalley*, 2022 WL 18459646, at *8; *Amin*, 301 F. Supp. 3d at 1294-95. The Court therefore finds that the Plaintiffs Dedman and Foster-Gittens have standing to assert their GUDTPA claim.

### iii.    Virginia Consumer Protection Act ("VCPA") Claim

"To properly state a cause of action under the VCPA, Plaintiff must allege (1) fraud, (2) by a supplier, (3) in a consumer transaction." *Nahigian v. Juno Loudoun, LLC*, 684 F. Supp. 2d 731, 741 (E.D. Va. 2010) (citation omitted). The Defendants argue that the Plaintiff Majette has not sufficiently pled fraud because he does not plead with particularity reliance on a specific misrepresentation or omission made by MBUSA and does not state facts showing MBUSA's knowledge of the defect. (Defs.' Br. in Supp. of Mot. to Dismiss, at 31). The Court has already found that the Fraudulent Concealment Plaintiffs have stated sufficient facts to plausibly allege knowledge and reliance on an omission. The Defendants have provided no authority for concluding that the VCPA has a higher pleading standard. *See Fravel v. Ford Motor. Co*, 973 F. Supp. 2d 651, 656-57 (W.D. Va. 2013). The Plaintiff Majette has incorporated the same facts that led the Court find that Rule 9(b) has been satisfied. (First Am. Compl. ¶ 304). Furthermore, he specifically alleged

reliance as to himself and knowledge by the Defendants. (*Id.* ¶¶ 149, 310, 313, 318). The Court therefore finds that the Plaintiff Majette has properly alleged a VCPA violation.

### iv.    Unfair Competition Law ("UCL") Claim

Plaintiff Phlegar alleges that the Defendants violated California's UCL. The Defendants seek dismissal of the count because Plaintiff Phelgar does not allege facts showing that she lacks an adequate remedy at law. (Defs.' Br. in Supp. of Mot. to Dismiss, at 31-32). Additionally, the Defendants contend that the count should be dismissed because Plaintiff Phlegar has not adequately alleged any acts that are unlawful, unfair, or fraudulent. (*Id.*, at 32-35). The Court is unpersuaded by either argument.

The Defendants' argument that the UCL claim must be dismissed because there is an adequate remedy at law relies on *Sonner v. Premier Nutrition Corp*, 971 F.3d 834 (9th Cir. 2020), and its progeny. (Defs.' Br. in Supp. of Mot. to Dismiss, at 31-32; Reply Br. in Supp. of Mot. to Dismiss, at 24-25). *Sonner* holds that a plaintiff "must establish that she lacks an adequate remedy at law before securing equitable restitution for past harm under the UCL and CLRA." *Sonner*, 971 F.3d at 844. In determining whether a plaintiff has done so, "the federal court must apply federal principles governing equity jurisdiction." *Guzman v. Polaris Indus. Inc.*, 49 F.4th 1308, 1312 (9th Cir. 2022) (citation omitted), *cert. denied sub nom. Polaris Indus. Inc. v. Albright*, 143 S. Ct. 2612 (2023). As stated above, federal principles permit plaintiffs to plead

alternative relief. *See supra* III.A.iii.; Fed. R. Civ. P. 8(a)(3). Consequently, "*Sonner* does not hold that plaintiffs may not seek alternative remedies at the pleading stage." *Sagastume v. Psychemedics Corp.*, 2020 WL 8175597, at *7 (C.D. Cal. Nov. 30, 2020) (citations omitted). It is too early at this stage to find that the Plaintiff Phlegar has an adequate remedy at law based on the allegation in the First Amended Complaint. *See Wildin v. FCA US LLC*, 2018 WL 3032986, at *7 (S.D. Cal. June 19, 2018) ("Discovery may reveal that the Wildins' claims providing legal remedies are inadequate for any number of reasons, despite the fact that their allegations appear adequate."). Furthermore, unlike in *Sonner*, the Plaintiff Phlegar does not merely seek a refund of the purchase price as equitable relief. *Compare* (First Am. Compl. ¶ 333) *with Sonner*, 971 F.3d at 844 ("Sonner concedes that she seeks the same sum in equitable restitution as 'a full refund of the purchase price'—$32,000,000—as she requested in damages to compensate her for the same past harm. Sonner fails to explain how the same amount of money for the exact same harm is inadequate or incomplete, and nothing in the record supports that conclusion."). For these reasons, the Court will not dismiss the UCL claim for failure to adequately allege an inadequate remedy at law.

The Defendants also move to dismiss the UCL claim because the Plaintiff Phlegar has failed to allege sufficient facts showing unlawful, unfair, or fraudulent practices. (Defs.' Br. in Supp. of Mot. to Dismiss, at 32-35). Because the UCL "is written in the disjunctive, it establishes three varieties of

unfair competition—acts or practices which are unlawful, or unfair, or fraudulent." *Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1554 (2007) (citation omitted). "An act can be alleged to violate any or all of the three prongs of the UCL—unlawful, unfair, or fraudulent." *Id.* An unlawful practice is any practice "forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made." *Leids v. Metlife Home Loans*, 2009 WL 4894991, at *4 (C.D. Cal. Dec. 7, 2009) (citation omitted). The Plaintiffs assert that they have satisfied this prong by alleging a violation of the Consumer Legal Remedies Act ("CLRA"). (First Am. Compl. ¶ 327; Pls.' Br. in Opp'n to Mot. to Dismiss, at 32). For the reasons described below, the Court agrees. *See infra* Section III.H.v. Because the Plaintiff Phlegar has properly alleged a violation of the CLRA and because the UCL is written in the disjunctive, the Court need not analyze whether the First Amended Complaint adequately alleges any unfair or fraudulent practices under the meaning of the UCL.

### v.   CLRA Claim

The Plaintiff Phlegar raises a CLRA claim against the Defendants. The Defendants move to dismiss the claim for failure to sufficiently plead knowledge and reliance. The Court finds that the Plaintiff Phlegar has adequately alleged both knowledge and reliance.

The CLRA requires plaintiffs to sufficiently allege that a defendant was aware of the defect at the time of sale to survive a motion to dismiss. *Wilson v.*

*Hewlett-Packard Co.*, 668 F.3d 1136, 1145 (9th Cir. 2012). Rule 9(b)'s heightened pleading standard applies to CLRA claims. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). However, as explained above, Rule 9(b) permits knowledge to be alleged generally. Fed. R. Civ. P. 9(b). The Court has already found above that the Plaintiff Phlegar's factual allegations meet that requirement. *See supra* Section III.F.iii. That conclusion is further bolstered by the "broad applicability" of the CLRA and the lack of "clear, binding precedent" dismissing CLRA claims for lack of knowledge. *Hadjian*, 2022 WL 3699603 (citations omitted). The Court finds that the Plaintiff Phlegar has adequately alleged the Defendants' knowledge of the defect for her CLRA claim.

The Defendants next argue that the CLRA claim should be dismissed because the Plaintiff Phlegar did not allege any "specific facts showing that she actually saw advertisements, or that she relied on them in deciding to purchase her vehicle." (Defs.' Br. in Supp. of Mot. to Dismiss, at 37). The CLRA cases that the Defendants rely on are inapposite because they involve misrepresentation rather than omissions. *See In re iPhone 4S Consumer Litig.*, 2013 WL 3829653, at *1-4, 12 (N.D. Cal. July 23, 2013); *Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939, 946 (S.D. Cal. 2007) ("Plaintiff alleges the thread count of the sheets she bought was lower than advertised and that, therefore, the sheets were not of the quality they were advertised to be."). However, "[c]learly, a plaintiff in a fraud by omission suit will not be able to

specify the time, place, and specific content of an omission as precisely as would a plaintiff in a false representation claim." *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1098-99 (N.D. Cal. 2007). Accordingly, "[p]leading reliance on an omission is not a particularly difficult burden." *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., and Prods. Liab. Litig.*, 349 F. Supp. 3d 881, 918 (N.D. Cal. 2018). "Under California law, a plaintiff may do so simply by alleging that, had the omitted information been disclosed, one would have been aware of it and behaved differently." *Id.* (quotation marks and citation omitted). The Plaintiff Phlegar has alleged that the defect was not disclosed to her by the Defendants' website, literature, or sales representatives at the point of sale. (First Am. Compl. ¶¶ 155, 339). She further alleges that she would not have purchased the vehicle or would have paid less for it if the Defendants had disclosed the defect. (*Id.* ¶¶ 156, 340). This is sufficient to allege reliance under the CLRA. The Plaintiff Phlegar's CLRA claim therefore will not be dismissed.

### vi.    Song-Beverly Implied Warranty Claim

The final claim against the Defendants is the Plaintiff Phlegar's Song-Beverly Act claim. The Defendants move to dismiss this claim both because the claim is time-barred and because the Plaintiff Phlegar's vehicle was not unfit for its ordinary purpose. (Defs.' Br. in Supp. of Mot. to Dismiss, at 37-40). The Court disagrees.

First, "[t]he Song-Beverly Act does not include its own statute of limitations; rather, the statute of limitations is governed by two separate time

57

limits." *Tanner v. Ford Motor Co.*, 424 F. Supp. 3d 666, 670-71 (N.D. Cal. 2019) (citation omitted). The first time limit is that the implied warranty lasts for a duration not to exceed one year following the sale of the good to a retail buyer. Cal. Civ. Code § 1791.1(c). "After that period the warranty ceases to exist, which means any breach of the implied warranty must have occurred within one-year of purchase." *Tanner*, 424 F. Supp. 3d at 671 (quotation marks and citation omitted). The second time limit is the statute of limitations. *Id.* For Song-Beverly Act claims, a plaintiff must bring their claims within four years of the time the breach occurs or should have been discovered. *Smothers v. BMW of N. Am., LLC*, 813 F. App'x 291, 293 (9th Cir. 2020); Cal. Com. Code § 2725. The Defendants do not contest in their Motion to Dismiss [Doc. 43] that the Plaintiff Phlegar has complied with the requirements of the statute of limitations if the alleged breach was covered by the warranty.

However, there is a dispute as to whether the warranty was still in effect when the PSR shattered. The Plaintiff Phlegar says it was because the alleged defect was latent at the time of sale; the Defendants say it was not because the PSR did not allegedly shatter until over a year after the vehicle was purchased. The Plaintiff Phlegar relies largely on *Mexia v. Rinker Boat Co., Inc.*, 174 Cal. App. 4th 1297 (2009). In *Mexia*, the court found that "[t]he implied warranty of merchantability may be breached by a latent defect undiscoverable at the time of sale." *Id.* at 1304 (citations omitted). "In the case of a latent defect, a product is rendered unmerchantable, and the warranty of merchantability is

breached, by the existence of the unseen defect, not by its subsequent discovery." *Id.* at 1305. The Plaintiff Phlegar then argues that she has alleged the PSR defect was latent at the time of sale, which under *Mexia* means the defect occurred within the durational period of the warranty. (Pls.' Br. in Opp'n to Mot. to Dismiss, at 39).

On the other hand, the Defendants cite to several federal cases after *Mexia* that dismissed Song-Beverly Act claims because the alleged breaches occurred after the warranty period. (Reply Br. in Supp. of Mot. to Dismiss, at 29-30). Many of those cases expressly criticized or cabined the holding of *Mexia. Valencia v. Volkswagen Grp. of Am. Inc*, 119 F. Supp. 3d 1130, 1139-40 (N.D. Cal. 2015); *Peterson v. Mazda Motor of Am., Inc.*, 44 F. Supp. 3d 965, 971-72 (C.D. Cal. 2014); *Grodzitsky v. Am. Honda Motor Co., Inc.*, 2013 WL 2631326, at *10-11 (C.D. Cal. June 12, 2013); *Marchante v. Sony Corp. of Am., Inc.*, 801 F. Supp. 2d 1013, 1021-22 (S.D. Cal. 2011). However, since those cases have been decided, the Ninth Circuit has ruled that *Mexia* must be followed. *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1222-23 (9th Cir. 2015). It found that "there is not convincing evidence that the California Supreme Court would decide the latent defect discovery issue that was presented in *Mexia* differently." *Id.* at 1222. The Defendants have presented no subsequent authority that would change this finding. As such, the Court follows *Mexia*'s ruling that "[t]here is nothing [in Cal. Civ. Code § 1791.1(c)] that suggests a requirement that the purchaser discover and report to the seller a latent defect

59

within that time period." *Mexia*, 174 Cal. App. 4th at 1310. The Plaintiff Phlegar's claim is therefore not time barred.

The Defendants also argue that the Song-Beverly Act claim should be dismissed because the Plaintiff Phlegar's car had been driven for years without any issues and it therefore was not unmerchantable. (Defs.' Br. in Supp. of Mot. to Dismiss, at 39-40). "Merchantability, as pertinent here, means that the goods '[p]ass without objection in the trade under the contract description,' and are 'fit for the ordinary purposes for which such goods are used.'" *Brand v. Hyundai Motor Am.*, 226 Cal. App. 4th 1538, 1545 (2014) (quoting Cal. Civ. Code § 1791.1(a)). The Defendants state that the "Plaintiff admits the car had been driven for years without incident, belying any claim that it does not satisfy a minimum level of quality." (Defs.' Br. in Supp. of Mot. to Dismiss, at 39). However, the Defendants' "attempt to define a vehicle as unfit only if it does not provide transportation is an unjustified dilution of the implied warranty of merchantability." *Isip v. Mercedes-Benz USA, LLC*, 155 Cal. App. 4th 19, 27 (2007).

The Defendants go on to assert that "[a] one-time incident of sunroof glass breakage does not render a car unmerchantable." (Defs.' Br. in Supp. of Mot. to Dismiss, at 40). Yet, none of the cases that they cite to support that proposition involve sunroof glass breakage. *Lee v. Toyota Motor Sales, U.S.A., Inc.*, 992 F. Supp. 2d 962, 979-80 (C.D. Cal. 2014) ("Plaintiffs have not and cannot truthfully allege in light of the IIHS report that their pre-collision

braking feature failed to automatically slow their vehicles in an unavoidable frontal collision." (citation omitted); *Troup v. Toyota Motor Corp.*, 545 F. App'x 668, 669 (9th Cir. 2013) ("[T]he defect alleged by the Troups did not implicate the Prius's operability; rather, it merely required the Troups to refuel more often."); *Hines v. Mercedes-Benz USA, LLC*, 358 F. Supp. 2d 1222, 1225-26, 1232-33 (N.D. Ga. 2005) (applying Georgia law at the summary judgment stage to alleged defects in the driver's seat, alarm system, car phone, and fuel nozzle).

Meanwhile, in *Tappana v. Am. Honda Motor Co., Inc.*, 609 F. Supp. 3d 1078, 1086 (C.D. Cal. 2022), the court found that the plaintiffs plausibly stated that their vehicles were unmerchantable under the Song-Beverly Act when the sunroofs shattered. There, the court reasoned that the vehicles were not fit for their ordinary purpose because of the safety hazard that they posed and because the plaintiffs likely would not have purchased the vehicles if they had known about the defect. *Id.* Similarly, here, the Plaintiff Phlegar alleges that her vehicle's "sunroof suddenly imploded and shattered." (First Am. Compl. ¶ 157). This caused there to be a hole in the roof of her car that exposed occupants to the elements and led her to "promptly contact[] a nearby authorized dealership" to seek repairs. (*Id.* ¶¶ 158-59, 350). The dealership refused to cover the repairs, and the Plaintiff Phlegar has since replaced the glass. (*Id.* ¶¶ 159-60). Furthermore, the Plaintiff Phlegar alleges that if she had known about the alleged defect, she would not have purchased the vehicle. (*Id.* ¶ 156). The Court finds that these facts are sufficient to allege a

Song-Beverly Act claim.

### IV.   Conclusion

For the reasons discussed above, the Defendants' Motion to Dismiss the Class Action Complaint [Doc. 33] is DENIED as moot and the Defendants' Motion to Dismiss the First Amended Complaint [Doc. 43] is GRANTED with respect to Count I as to Plaintiffs Dedman and Phlegar, Count II as to Plaintiff Dedman, Count III in its entirety, and Count V as to the Plaintiffs Bolling and Foster-Gittens. It is DENIED as to all other claims.

SO ORDERED, this ___30th___ day of January, 2024.

THOMAS W. THRASH, JR.
United States District Judge

62