IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

NATALIE BOLLING, individually and
on behalf of all others similarly
situated,

     Plaintiff,

       v.

MERCEDES-BENZ USA, LLC, et al.,

     Defendants.

CIVIL ACTION FILE
NO. 1:23-CV-671-TWT

## OPINION AND ORDER

This is a products liability case. It is before the Court on Defendant Mercedes-Benz Group AG ("MBG")'s Partial Motion to Dismiss [Doc. 75]. As set forth below, MBG's Partial Motion to Dismiss [Doc. 75] is GRANTED in part and DENIED in part.

## I.    Background[1]

This case involves allegedly defective panoramic sunroofs ("PSRs") that would spontaneously shatter while using certain vehicle models sold by the Defendants.[2] Defendant MBG is a foreign corporation "engaged in the business of designing, engineering, manufacturing, testing, marketing,

---

[1] The Court accepts the facts as alleged in the First Amended Complaint as true for purposes of the present Motion to Dismiss. *Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1122 (11th Cir. 2019).

[2] The Defendants in this case are MBG and Mercedes-Benz USA, LLC ("MBUSA").

supplying, selling, and distributing motor vehicles, including the Class Vehicles, in the United States." (1st Am. Compl. ¶ 27). Defendant "MBUSA is a[n MBG]-owned distributor for passenger cars in the United States." (*Id.* ¶ 26). MBG "owns 100% of the shares of MBUSA and at all relevant times, MBUSA has been and has acted as an agent of MB[G] and was subject to MB[G]'s control." (*Id.* ¶ 34). The Named Plaintiffs are individuals who purchased or leased the Defendants' vehicles whose PSRs suddenly shattered under normal driving conditions. (*Id.* ¶¶ 20-25, 101, 117, 126, 139, 150, 157). The Plaintiffs bring this case on behalf of a putative class—as well as state-specific subclasses—of individuals who purchased or leased a Class Vehicle.[3] (*Id.* ¶ 162).

The Court described the Plaintiffs' allegations in more detail in its Opinion and Order addressing MBUSA's Motion to Dismiss. *See Bolling v. Mercedes-Benz USA, LLC*, 2024 WL 3972987, at *1-2 (N.D. Ga. Aug. 27, 2024). The Court granted in part and denied in part MBUSA's Motion to Dismiss. *Id.* at *23. Now, MBG moves to dismiss several of the claims against it.

---

[3] The Class Vehicles include the following models: 2011-present C-Class, 2014-present CLA-Class, 2011-present E-Class, 2011-present GL-Class/GLS-Class, 2011-present GLK-Class/GLC-Class, 2012-present M-Class/GLE Class, 2015-2017 Mercedes Maybach S-600, 2011-2012 R-Class, 2011-present S-Class, 2011-2019 SL-Class, and 2013-2020 SLK-Class/SLC-Class. (*Id.* ¶ 161).

## II.    Legal Standard

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); Fed. R. Civ. P. 12(b)(6). A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is "improbable" that a plaintiff would be able to prove those facts; even if the possibility of recovery is extremely "remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff. *See Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 994-95 (11th Cir. 1983); *see also Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994) (noting that at the pleading stage, the plaintiff "receives the benefit of imagination"). Generally, notice pleading is all that is required for a valid complaint. *See Lombard's, Inc. v. Prince Mfg., Inc.*, 753 F.2d 974, 975 (11th Cir. 1985). Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555).

## III.    Discussion

MBG argues that the Plaintiffs have failed to state a claim as to their implied warranty, Magnus-Moss Warranty Act, fraudulent concealment,

3

unjust enrichment claims, and several state law claims against it. (MBG's Br. in Supp. of Partial Mot. to Dismiss, at 1). The Plaintiffs acknowledge that—under the reasoning of the Court's previous Opinion and Order—the Magnuson-Moss Warranty Act claim and Plaintiff Joseph Dedman's implied warranty claim should be dismissed.[4] (Pls.' Br. in Opp'n to Partial Mot. to Dismiss, at 2). The Court agrees and will therefore dismiss those claims for the reasons set forth in the Court's previous Opinion and Order. *See Bolling*, 2024 WL 3972987 at *10, 13. The Court addresses the rest of the parties' arguments below.

## A. Implied Warranty Claim

Plaintiffs Natalie Bolling, Latoya Foster-Gittens, and Dedman all assert a claim of breach of implied warranty, individually and on behalf of the Alabama and Georgia sub-classes. (1st Am. Compl. ¶¶ 202-24). Since the Court has already held that Plaintiff Dedman's claim will be dismissed, the Court will focus its analysis on Plaintiffs Bolling and Foster-Gittens. MBG asserts two grounds for dismissing those Plaintiffs' claims: the failure to comply with pre-suit notice requirements and the failure to plausibly allege privity between

---

[4] While the Plaintiffs do not seek to relitigate these issues now, they do adopt the arguments they made in opposition to MBUSA's motion to dismiss to preserve those arguments going forward. (Pls.' Br. in Opp'n to Partial Mot. to Dismiss, at 2). Similarly, MBG does not assert arguments that the Court has already addressed but joins all of the arguments previously made by MBUSA for preservation purposes. (MBG's Br. in Supp. of Partial Mot. to Dismiss, at 3 n. 2).

the Plaintiffs and MBG. (MBG's Br. in Supp. of Partial Mot. to Dismiss, at 4).

i.   **Pre-Suit Notice**

Both Alabama and Georgia law require pre-suit notice to the defendant in a breach of implied warranty claim. *Harman v. Taurus Int'l Mfg., Inc.*, 586 F. Supp. 3d 1155, 1163 (M.D. Ala. 2022) ("The Eleventh Circuit, however, has examined Alabama law and has concluded that the Alabama Commercial Code makes notice a condition precedent to any claim of breach of warranty by a buyer. There is no distinction between implied warranties and express warranties for purposes of the precondition." (citations omitted)); *In re Ford Motor Co. E-350 Van Prods. Liab. Litig. (No.II)*, 2010 WL 2813788, at *34 (D.N.J. July 9, 2010) ("As codified under Georgia law, as a prerequisite to an express or implied warranty claim, the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." (citation omitted)). The Court has already ruled that Plaintiff Bolling sufficiently alleged that she gave pre-suit notice to MBUSA as inferred from her allegation that MBUSA conducted an investigation and refused to cover her repairs. *See Bolling*, 2024 WL 3972987, at *8-9. Plaintiff Foster-Gittens indisputably alleged that she provided notice to MBUSA. (1st Am. Compl. ¶ 143).

MBG does not seek to re-litigate these issues. Instead, it argues that neither Plaintiff gave pre-suit notice to MBG and that providing notice to MBUSA does not satisfy the requirement with respect to MBG. (MBG's Br. in

Supp. of Partial Mot. to Dismiss, at 4-5). The Plaintiffs assert that they sufficiently alleged an agency relationship between MBG and MBUSA and that giving notice to MBUSA therefore satisfies the pre-suit notice requirement. (Pls.' Br. in Opp'n to Partial Mot. to Dismiss, at 3-4). They also argue, with respect to Plaintiff Foster-Gittens, that MBG has failed to demonstrate that it was prejudiced by the lack of direct notice to MBG. (*Id.*, at 4-5). The Court finds that these Plaintiffs have properly stated a claim.

Starting with Plaintiff Bolling, MBG argues that her notice to MBUSA is insufficient to provide notice to MBG by pointing to the fact that *Harman*, 586 F. Supp. 3d at 1163, rejected the theory that "Alabama law only requires a buyer to give notice to the seller, not a manufacturer." (Reply Br. in Supp. of Partial Mot. to Dismiss, at 2). MBG overreads this case. The plaintiff there did not argue that he provided notice to the seller and that that meant he did not need to provide separate notice to the manufacturer. *Harman*, 586 F. Supp. 3d at 1163. Instead, the plaintiff argued that a manufacturer may not use the lack of pre-suit notice as a defense to a breach of warranty claim, the court rejected that argument. *Id.* The Plaintiffs here make a different argument.

The Plaintiffs assert that Plaintiff Bolling sufficiently alleged pre-suit notice to MBUSA and that those allegations coupled with the allegations about the agency relationship between MBUSA and MBG are sufficient to allege notice to MBG. (Pls.' Br. in Opp'n to Partial Mot. to Dismiss, at 3-4). Under Alabama law, an agent's knowledge may be imputed to the principal when the

6

agent is acting in the scope of the agency relationship. *See, e.g., CIT Grp./Equip. Fin., Inc. v. Roberts*, 885 So.2d 185, 190 (Ala. Civ. App. 2003) ("The theory, known as the 'imputed knowledge rule,' upon which imputation of knowledge from an agent to its principal rests is that, when the agent acts within the scope of the agency relationship, there is identity of interests between principal and agent." (emphasis and citation omitted)); *Williams v. Fundaburk*, 237 Ala. 30, 32 (1938) ("The knowledge of an agent may be imputed to the principal as a matter of law, creating an incontestable presumption; but that arises only when the agent acquires the knowledge as an incident to the transaction of the business of the principal." (citation omitted)). It follows from this general rule that if MBUSA was acting as MBG's agent, then MBUSA's notice of Plaintiff Bolling's defect may be imputed to MBG. *See Hall & Brown Wood Working Mach. Co. v. Haley Furniture & Mfg. Co.*, 174 Ala. 190, 199 (1911) (identifying from other cases "the general rule that notice to an agent, with respect to a matter as to which he is then serving as agent, is notice to the principal."). MBG provides no reason to deviate from these general concepts of agency law in the context of an implied warranty claim.[5]

---

[5] The only other case that MBG cites to in its briefs is *Morris v. AngioDynamics, Inc.*, 2024 WL 476884, at *2 (M.D. Ala. Feb. 7, 2024). However, that case merely held that the plaintiff's pre-suit notice allegations were conclusory, which was "probably so because [the plaintiff] has no knowledge, personally or otherwise, that any pre-suit notice was ever provided to any of the Defendants or anyone else for that matter." *Id.* at *3. Here, the

The Court accordingly turns to the First Amended Complaint to assess if the Plaintiffs have adequately pled an agency relationship between MBUSA and MBG. The First Amended Complaint asserts that MBG is "the parent of, controls, and communicates with MBUSA concerning virtually all aspects of the Class Vehicles distributed in the United States." (1st Am. Compl. ¶ 31). It further states that "MBUSA acts as the sole distributor for Mercedes-Benz vehicles in the United States, purchasing those vehicles from MB[G] in Germany for sale in this country." (*Id.* ¶ 32). Moreover, the Plaintiffs plead that "[t]he relationship between MB[G] and MBUSA is governed by a General Distributor Agreement that gives MB[G] the right to control nearly every aspect of MBUSA's operations – including sales, marketing, management, policies, information governance policies, pricing and warranty terms." (*Id.* ¶ 33). Finally, the First Amended Complaint asserts that "MB[G] owns 100% of the shares of MBUSA and at all relevant times, MBUSA has been and has acted as an agent of MB[G] and was subject to MB[G]'s control." (*Id.* ¶ 34). MBG contends that the allegations about agency are "conclusory" and "threadbare." (Reply Br. in Supp. of Partial Mot. to Dismiss, at 1, 4-5).

MBG relies on *McCabe v. Daimler AG*, 948 F. Supp. 2d 1347 (N.D. Ga. 2013), to support its position. (*Id.* 4-5). There, the court dismissed an implied

---

Court has already found that Plaintiff Bolling sufficiently alleged that she provided pre-suit notice to MBUSA. *Bolling*, 2024 WL 3972987, at *9. Thus, *Morris* is distinguishable.

warranty claim against a manufacturer—Daimler AG—for lack of privity.[6] *Id.* at 1362 n. 5. MBG then points to the complaint in *McCabe*, which states that the warranty was "issued at the direction of Daimler AG." *McCabe v. Daimler AG*, 1:12-cv-2494-TCB (N.D. Ga.), Doc. 13 ¶ 136 n. 5. It appears to the Court that MBG is arguing that the *McCabe* court rejected an agency theory when it dismissed the implied warranty claim against Daimler AG for lack of privity but did not do so for the claim against MBUSA. However, there is no discussion of agency in the entire opinion, nor any indication that the plaintiffs even raised it as an argument. *See generally McCabe*, 948 F. Supp. 2d 1347. To the extent that MBG is inviting the Court to extrapolate a holding that it appears was not even considered, the Court will decline.

By contrast, *Amin v. Mercedes-Benz USA, LLC*, 349 F. Supp. 3d 1338, 1357-58 (N.D. Ga. 2018), directly addresses the sufficiency of agency allegations in a similar context. There, the plaintiff alleged:

> Upon information and belief, Daimler has, and at all relevant times had, the contractual right to exercise, and in practice has exercised, control over MBUSA's work, including but not limited to the design of the Class Vehicles, the manner of Class Vehicles' marketing, the scope of written warranties, the scope of repairs in practice to be covered under warranty, and representations made and facts withheld from consumers and the public about the HVAC System Defect. Daimler has been directly involved in assisting, directing, and controlling MBUSA, and MBUSA's

---

[6] The discussions in the briefs about agency reside primarily in their respective privity sections, which is why the cases they cite revolve around privity. The Court will address the privity-specific components of their arguments in the next section. For purposes of pre-suit notice, the Court is merely analyzing whether the allegations are too conclusory to satisfy Rule 8.

> authorized dealers' handling of Class Member complaints
> regarding the HVAC System Defect.

*Id.* at 1357. The Court held that such allegations "are sufficient, albeit barely, to allege an agency relationship." *Id.* at 1357-58. The allegations here are even less conclusory. The First Amended Complaint states that MBUSA is MBG's sole distributor in the United States, identifies the specific agreement that gives MBG the right to control MBUSA, and describes MBG as having 100% ownership stake in MBUSA. (1st Am. Compl. ¶¶ 32-34). To the extent that MBG argues that more factual details should be required, the Court is mindful that "the quality and quantity of facts required to amplify the element of 'control' likely lie within the sole possession of [MBG] and hence, without adequate discovery, it is unlikely Plaintiffs would be able to plead their agency allegations with further specificity." *Amin*, 349 F. Supp. 3d at 1357; *see also In re Volkswagen Timing Chain Prod. Liab. Litig.*, 2017 WL 1902160, at *9 (D.N.J. May 8, 2017) ("Plaintiffs cannot be expected to know the exact corporate structure and degree of each Defendant's involvement, at this stage in the litigation and prior to discovery." (citation omitted)). The Court therefore finds that the Plaintiffs have sufficiently alleged an agency relationship. Consequently, the Court will impute to MBG the pre-suit notice Plaintiff Bolling gave to MBUSA.

As for Plaintiff Foster-Gittens, the First Amended Complaint alleges that she provided notice to MBUSA. (1st Am. Compl. ¶ 143). The Georgia case

law about imputing an agent's knowledge to a principal is substantially similar to Alabama's case law. *See, e.g.*, *Chicagoland Vending, Inc. v. Parkside Ctr., Ltd.*, 265 Ga. 318, 319 (1995) ("It is true that the law imputes to the principal all notice or knowledge concerning the subject matter of the agency which the agent acquires while acting as agent and within the scope of his authority[.]" (citation omitted)). Since the Plaintiffs have sufficiently alleged that MBUSA is an agent of MBG, the Court finds that the notice provided by Plaintiff Foster-Gittens to MBUSA can be imputed to MBG. The Court will not dismiss the implied warranty claim by either Plaintiff Bolling or Foster-Gittens on this ground.

### ii.  Privity

A plaintiff cannot maintain an action for implied breach of warranty without plausibly alleging privity between the defendant and plaintiff. *See Monticello v. Winnebago Indus., Inc.*, 369 F. Supp. 2d 1350, 1361 (N.D. Ga. 2005) ("Plaintiff's claim for breach of implied warranty fails because Plaintiff is not in privity with Defendants."); *Rhodes v. Gen. Motors Corp., Chevrolet Div.*, 621 So.2d 945, 947 (Ala. 1993) ("There is no right of action on an implied warranty theory against a *manufacturer* for property damage without privity of contract." (citation omitted)). As MBG points out, under Georgia law, "when a buyer purchases a product from a retailer, and there is no privity of contract between the manufacturer and the buyer, no implied warranty runs from the manufacturer to the purchaser." *McQueen v. Minolta Bus. Sols., Inc.*, 275 Ga.

11

App. 297, 300 (2005); *see also Monticello*, 369 F. Supp. 2d at 1361.[7] The Plaintiffs assert that those cases are distinguishable because they did not involve allegations of agency or control. (Pls.' Br. in Opp'n to Partial Mot. to Dismiss, at 5). The Plaintiffs cite to *Amin*, 349 F. Supp. at 1355-58, to support their position that the privity requirement may be satisfied if the seller is an agent of and under the control of the manufacturer. (*Id.* at 5-6). The court in *Amin* acknowledged that Georgia courts have not taken a position on whether a plaintiff may state an implied warranty claim on an agency theory. *Amin*, 349 F. Supp. at 1356. It then turned to Florida law because "the privity requirement necessary to adequately plead a breach of warranty claim is a *sine qua non* under both Georgia as well as Florida law," and it found that Florida law permits such a theory. *Id.* (citations omitted). "In light of this inescapable fact and in the absence of binding or persuasive Georgia authority stating that an agency relationship can *never* provide a basis for the necessary privity to sustain a breach of implied warranty claim by a downstream purchaser, the Court finds that such a theory, if adequately pleaded, would be sufficient to survive a motion to dismiss based solely upon privity grounds." *Id.*

---

[7] MBG contends that the same principle exists under Alabama law, but the case it cites—*Hurry v. Gen. Motors LLC*, 2022 WL 3587349, at *7-8 (M.D. Ala. 2022)—held that the plaintiffs did state a claim against the manufacturer as a third-party beneficiary for the implied warranty of merchantability. (MBG's Br. in Supp. of Partial Mot. to Dismiss, at 6). If anything, this case undermines MBG's argument that Plaintiff Bolling's claim should be dismissed because she did not allege "any direct dealings or relations with MBG." (*Id.* at 5).

The Court finds this reasoning persuasive. Since the privity requirement is a *sine qua non* under Alabama law too—as seen in *Rhodes*, 621 So.2d at 947—and since MBG fails to identify any Alabama case barring an agency theory of privity, the Court will follow *Amin* for Plaintiff Bolling as well as Plaintiff Foster-Gittens. The Court has already concluded that the Plaintiffs have adequately alleged an agency relationship between MBUSA and MBG. Accordingly, the Court will not dismiss the implied warranty claims as to Plaintiffs Bolling and Foster-Gittens.

## B. Fraud-Based Claims

MBG also challenges the Plaintiffs' fraud-based claims. These include the claim for fraudulent concealment as well as alleged violations of the Georgia Fair Business Practices Act ("GFBPA"), California Consumer Legal Remedies Act ("CLRA"), and the fraudulent prong of the California Unfair Competition Law ("UCL"). (MBG's Br. in Supp. of Partial Mot. to Dismiss, at 7-10, 13-15). For each of these, MBG challenges on two grounds: (1) the Plaintiffs have not plausibly alleged that MBG had a duty to disclose, and (2) the Plaintiffs have failed to adequately allege that MBG had knowledge of the alleged defect. (*Id.*). The Court considers both of these arguments in turn.

### i. Duty to Disclose

Under Georgia law, "[a]n obligation to disclose must exist before a party may be held liable for fraud based upon the concealment of material facts." *DaimlerChrysler Motors Co., LLC v. Clemente*, 294 Ga. App. 38, 56 (2008)

(citation omitted).[8] As the Court has previously explained,

> a duty to disclose may arise from the confidential relations of the parties or from the particular circumstances of the case. Thus, a duty to disclose may exist even without a confidential relationship if the particular circumstances of the case create the duty. The particular circumstances of the case may give rise to an obligation to communicate where there is a concealment of intrinsic qualities of the article which the other party by the exercise of ordinary prudence and caution could not discover.

*Bolling*, 2024 WL 3972987, at *16 (N.D. Ga. Aug. 27, 2024) (quotation marks and citations omitted).

MBG cites to several cases to argue that it could not have been under a duty to disclose because it had no direct relationship with the Plaintiffs. (MBG's Br. in Supp. of Partial Mot. to Dismiss, at 8-9). However, most of the cases it cites have no discussion whatsoever about whether an agent's duty to disclose may be imputed to the agent's principal. *See Mitchell v. Ford Motor Credit Co.*, 68 F. Supp. 2d 1315, 1319-20 (N.D. Ga. 1998); *Moore v. Meeks*, 225 Ga. App. 287, 287 (1997); *McGaffin v. Cementos Argos S.A.*, 2017 WL 150501, at *10 (S.D. Ga. Jan. 13, 2017). The only Georgia case to which MBG cites that discusses agency suggests—if anything—that an agency relationship would be sufficient. *McCabe v. Daimler AG*, 160 F. Supp. 3d 1337, 1352 (N.D.Ga. 2015)

---

[8] The Court has already found that Georgia law applies to the fraudulent concealment claim for all of the Plaintiffs. *Bolling*, 2024 WL 3972987, at *14. MBG argues that the Georgia Plaintiffs' GFBPA claim should be dismissed "for the same reasons the fraudulent concealment claims fail." (MBG's Br. in Supp. of Partial Mot. to Dismiss, at 14). MBG does not make any suggestion that the pleading standard is higher for the GFBPA claim than it is for the fraudulent concealment claim. (*Id.*).

("The cases finding a duty to disclose under the 'particular circumstances' prong of O.C.G.A. § 23–2–53 involved some sort of a relationship between the parties and there is no evidence of that before this Court . . . In order to find some relationship between Defendants and these Plaintiffs, the Court would have to assume some element of agency between Defendants and the Mercedes–Benz dealerships with whom Herring and McCabe interacted, and there is simply no evidence in the record to support this." (citations omitted)).

Meanwhile, the Plaintiffs point to *Amin*, 349 F. Supp. 3d at 1360, for support. There, as here, the court issued an order denying MBUSA's motion to dismiss before addressing the parent company's motion to dismiss. *Id.* at 1359-60. The *Amin* court recited the allegations that were sufficient to state a claim against MBUSA and then explained, "if these actions can be imputed to Daimler under an agency theory, Daimler's motion to dismiss as to this claim must be denied . . . the Court concludes that Plaintiffs' allegations sufficiently impute MBUSA's actions and/or omissions concerning vehicle repair and servicing to Daimler thus creating the required factual connection at this stage." *Id.* at 1360. MBG points to no flaw in the *Amin* court's reasoning nor to any fact that meaningfully distinguishes these cases. (Reply Br. in Supp. of Partial Mot. to Dismiss, at 5-6). Seeing none either, the Court will follow suit and hold that at this stage of litigation, the Plaintiffs have sufficiently alleged a duty to disclose under Georgia law.

As for California law,[9] MBG cites to two cases in its Reply Brief to support dismissal. Both cases dismissed claims for fraud under Rule 9(b) because the plaintiffs did not delineate which defendant committed which acts or omissions in furtherance of the fraud. *Bruce v. Harley-Davidson, Inc.*, 2010 WL 3521775, at \*3-5 (C.D. Cal. Jan. 15, 2010) ("[U]nder Rule 9(b), plaintiffs must specifically allege as to Harley–Davidson, Inc. and Harley–Davidson Motor Company, Inc., their respective roles in the alleged fraudulent scheme— for example, which defendant possessed superior knowledge or actively concealed the alleged defect, or if the parent company allegedly ratified the acts of the manufacturer/distributor. Accordingly, the Court dismisses without prejudice plaintiffs' CLRA, UCL, and fraudulent omission claims, in so far as these claims are grounded in fraud."); *Drake v. Toyota Motor Corp.*, 2020 WL 7040125, at \*10-11 (C.D. Cal. Nov. 23, 2020) ("For each of the six causes of action that sound in fraud, there is no delineation between the actions of individual defendants but, instead, all allegations are made against the generic collective entity 'Toyota' or 'Defendants.' Thus, the allegations within each cause of action fails to notify each Defendant of the particular allegations against them or specify what impermissible acts they have been accused of." (citation omitted)).

---

[9] The CLRA and the fraudulent prong of the UCL are governed by the same standard. *Punian v. Gillette Co.*, 2016 WL 1029607, at \*5 (N.D. Cal. Mar. 15, 2016) (compiling cases).

Other cases from California take a different approach. In *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 539-40 (9th Cir. 1989) (citation omitted), the Ninth Circuit stated in the context of a securities fraud case, "[i]nstances of corporate fraud may also make it difficult to attribute particular fraudulent conduct to each defendant as an individual. To overcome such difficulties in cases of corporate fraud, the allegations should include the misrepresentations themselves with particularity and, where possible, the roles of the individual defendants in the misrepresentations." A district court then applied the same reasoning to CLRA and UCL claims when it declined to dismiss the claims for lumping the defendants together. *Munning v. Gap, Inc.*, 2016 WL 6393550, at *3 (N.D. Cal. Oct. 28, 2016). As another court put it, "in a fraud suit involving multiple defendants, a plaintiff must, at a minimum identify the role of each defendant in the alleged fraudulent scheme. However, where the defendants are entities that largely hold the same role, courts have declined to dismiss for inappropriate grouping." *Pereda v. Gen. Motors LLC*, 2022 WL 19975388, at *10 (N.D. Cal. Dec. 9, 2022) (citation omitted).

The Court finds these latter cases more persuasive and concludes that the California Plaintiffs have plausibly alleged a duty to disclose under the UCL and CLRA. MBG owns 100% of MBUSA and has a right to control MBUSA pursuant to a General Distributor Agreement. (1st Am. Compl. ¶¶ 33-34). Moreover, all of MBG's counsel of record also represent MBUSA. Accordingly, there is little risk that MBG has not had proper notice of the

17

claims against it. *See Munning*, 2016 WL 6393550, at *3 ("[B]ecause the Defendants all share a parent-subsidiary relationship with The Gap Inc. as the parent company and because all the Defendants are represented by the same counsel, frustration of notice of the claims to each defendant is unlikely."). The Court sees little reason to dismiss claims simply because a plaintiff could not divine the byzantine inner workings of a corporate conglomerate.

### ii.  Knowledge of the Defect

"In the context of fraudulent-concealment claims, the scienter element requires that the alleged defrauder had actual, not merely constructive, knowledge of the fact concealed." *McCabe*, 948 F. Supp. 2d at 1368 (N.D. Ga. 2013) (quotation marks and citation omitted). The Court has already concluded in its Order in response to MBUSA's motion to dismiss that the Plaintiffs have plausibly pled scienter. *Bolling*, 2024 WL 3972987, at *15-16, 21. None of the allegations that the Court relied on specifically singled out MBUSA. (1st Am. Compl. ¶¶ 9, 14-16, 62, 65-66, 104, 142). Rather, they either referred to the Defendants collectively or they involved dealership personnel. (*Id.*). The Court concluded above that the Plaintiffs' group pleading is not impermissible at this time. Thus, MBG's argument is little more than asking the Court to change its mind. Having reviewed the cases to which MBG cites, the Court finds no reason to come to a different conclusion. At this stage of the litigation, the Court finds that the Plaintiffs have adequately alleged their fraud-based claims.

## C. Unjust Enrichment Claim

> "[A] claim for unjust enrichment exists where a plaintiff asserts that the defendant induced or encouraged the plaintiff to provide something of value to the defendant; that the plaintiff provided a benefit to the defendant with the expectation that the defendant would be responsible for the cost thereof; and that the defendant knew of the benefit being bestowed upon it by the plaintiff and either affirmatively chose to accept the benefit or failed to reject it."

*Campbell v. Ailion*, 338 Ga. App. 382, 387 (2016) (citation omitted). MBG argues that the Plaintiffs' unjust enrichment claim should be dismissed for three reasons. First, it asserts that because the New Vehicle Limited Warranty ("NVLW") governs the dispute, there can be no unjust enrichment claim. (MBG's Br. in Supp. of Partial Mot. to Dismiss, at 10-11). Second, MBG contends that the Plaintiffs have failed to allege that they conferred a direct benefit onto MBG. (*Id.*, at 11-12). Finally, MBG argues that even if it had received a direct benefit, it did not know about the alleged benefit and accept it. (*Id.*, at 12-13).

### i. Existence of a Contract

Starting with the argument that the unjust enrichment claim must be dismissed because the NVLW governs, the Court has already addressed this in its previous Order. *Bolling*, 2024 WL 3972987, at *17. The Court agrees with MBG with respect to Plaintiffs Bolling and Foster-Gittens because their express warranty claim has not been dismissed and therefore the existence of a valid contract between the parties is undisputed. *Id.*; *Callen v. Daimler AG*,

2020 WL 10090879, at *13 (N.D.Ga. June 17, 2020). However, Plaintiffs Hale, Dedman, and Phlegar either do not have or never had an express warranty claim. Their unjust enrichment claims do not warrant dismissal on this ground. *See, e.g.*, *Bolling*, 2024 WL 3972987, at *17; *Nalley v. Gen. Motors LLC*, 2022 WL 18459646, at *9 (N.D. Ga. Aug. 30, 2022); *Amin v. Mercedes-Benz USA, LLC*, 301 F. Supp. 3d 1277, at 1296-97 (N.D. Ga. 2018).

### ii.    Direct Benefit

Next, MBG contends that dismissal is proper because the Plaintiffs have not alleged that they bought their vehicles directly from MBG and because unjust enrichment assertedly requires direct conferral of a benefit. (MBG's Br. in Supp. of Partial Mot. to Dismiss, at 11-12). Courts in similar circumstances have rejected this argument. *See, e.g.*, *Nalley*, 2022 WL 18459646, at *9 ("GM argues that Plaintiff's unjust enrichment claim is not viable because Plaintiff purchased his vehicle from a dealership and therefore conferred no benefit directly on GM. However, to maintain an action for unjust enrichment, it is not necessary that the plaintiff allege a direct payment by the plaintiff to the allegedly unjustly-enriched defendant." (quotation marks and citations omitted)); *Amin*, 349 F. Supp. 3d at 1363 ("While Daimler attempts to attack Plaintiffs' allegations based upon the fact that no *direct* benefit has been conferred, the Court finds this argument without merit since the conferral of direct benefit as opposed to indirect benefit is not required to adequately plead a cause of action sounding in unjust enrichment." (citations omitted)).

20

The cases to which MBG cites arise in different circumstances. To use one example, MBG cites to *Tiller v. State Farm Mut. Auto. Ins. Co.*, 549 F. App'x 849, 856 (11th Cir. 2013). (MBG's Br. in Supp. of Partial Mot. to Dismiss, at 12). In that case, the Plaintiffs were in a motor vehicle accident and the insurer was supposed to pay the Plaintiffs for the diminished value of the vehicles separate from the repairs. *Id.* at 851. The Plaintiffs then sued when the value was allegedly deflated. *Id.* at 851-52. The court dismissed the unjust enrichment claim against the insurer:

> In this case, the plaintiffs have not conferred any sort of benefit on State Farm or performed any services for State Farm for which they have not been paid. Instead, their alleged injury is that State Farm underpaid a legal obligation that its insureds owed them. Assuming that is true, unjust enrichment is not the right avenue to recover the money. Plaintiffs should instead proceed against the insureds as required by the standing rule articulated in *Richards* [*v. State Farm Mut. Auto. Ins. Co.*, 252 Ga. App. 45, 45-46 (2001)[10]]."

*Id.* at 857 (citation omitted). Here, by contrast, the Plaintiffs did allegedly confer a benefit to MBG through MBG's agent. The Court finds that that is sufficient at this stage.

---

[10] *Richards* states that in Georgia, the general rule is that "a party not in privity of contract may not bring a direct action suit against the liability insurer of the party alleged to have caused damage absent an unsatisfied judgment against the insured, legislative mandate, or as permitted by a provision in the insurance policy in issue." *Richards*, 252 Ga. App. at 45. MBG points to no similar rule in the products liability context.

21

### iii.    Knowledge

Lastly, MBG challenges the unjust enrichment claim on the grounds that it did not have knowledge of any benefit it received from the Plaintiffs. (MBG's Br. in Supp. of Partial Mot. to Dismiss, at 12-13). MBG is correct that such a requirement exists. *See Reidling v. Holcomb*, 225 Ga. App. 229, 232 (1997) ("Inherent in unjust enrichment is the requirement that the receiving party knew of the value being bestowed upon them by another and failed to stop the act or to reject the benefit."). However, "this argument fails for two reasons: (1) taking as true Plaintiffs' allegations of agency, any knowledge of the benefit, even if conferred directly on MBUSA, would nevertheless be imputed to [MBG] as the principal; and, in any event (2) the nature and extent of [MBG]'s knowledge, in this regard, requires a factual inquiry that is not ripe for adjudication at this stage of the litigation." *Amin*, 349 F. Supp. 3d at 1363. Consequently, the Court will not dismiss the unjust enrichment claim asserted by Plaintiffs Hale, Dedman, and Phlegar.

### D. Remaining State-Law Claims

MBG makes arguments about two other state law claims asserted by subclasses of the Plaintiffs.

### i.    Alabama Deceptive Trade Practices Act ("ADTPA") Claim

MBG argues that the Plaintiffs' ADTPA claim against it should be dismissed. First, it argues that the Plaintiffs failed to comply with the pre-suit notice requirement under Ala. Code § 8-19-10(e). (MBG's Br. in Supp. of Partial

Mot. to Dismiss, at 13). However, as the Plaintiffs point out, there is only a pre-suit notification requirement here if MBG maintains a place of business or keeps assets within the state of Alabama. *See* Ala. Code § 8-19-10(e) ("The demand requirements of this subsection shall not apply if the prospective respondent does not maintain a place of business or does not keep assets within the state[.]"). MBG fails to point to any allegation that states MBG fits either requirement, and the Court sees none either. (Reply Br. in Supp. of Partial Mot. to Dismiss, at 9).

Second, MBG argues that an ADTPA claim cannot be asserted on behalf of a class. (MBG's Br. in Supp. of Partial Mot. to Dismiss, at 13). Alabama law states, "[a] consumer or other person bringing an action under this chapter may not bring an action on behalf of a class." Ala. Code § 8-19-10(f). However, the Eleventh Circuit has held that this limitation does not apply in federal court. *Lisk v. Lumber One Wood Preserving, LLC*, 792 F.3d 1331, 1336 (11th Cir. 2015) ("The bottom line is this. The Alabama statute restricting class actions, like the New York statute at issue in *Shady Grove*, does not apply in federal court. Rule 23 controls."). That holding is binding on this Court. Accordingly, the Court will not dismiss the Alabama Plaintiffs' ADTPA claim.

### ii. Unfairness Prong of the UCL Claim

The Court has already addressed MBG's arguments about the fraud prong of the California Plaintiffs' UCL claim. MBG's argument that the unfairness prong of the California Plaintiffs' UCL claim should be dismissed is

based on the fact that MBG did not have pre-sale knowledge of the purported defect. (MBG's Br. in Supp. of Partial Mot. to Dismiss, at 15). The Court has already found for the purposes of the fraud-based claims that the Plaintiffs did adequately allege pre-sale knowledge. The same allegations lead to the same conclusion here. *Cf. Punian v. Gillette Co.*, 2015 WL 4967535, at *12 (N.D. Cal. Aug. 20, 2015) ("Accordingly, because Plaintiff's unfair prong of the UCL claim is similarly premised on the allegation that Defendants knowingly concealed a product defect from consumers, either at the time of sale or at the time of any allegedly false or misleading representations, the unfair prong of the UCL claim suffers from the same defect as [California's False Advertising Law] and the CLRA causes of action."). Accordingly, the Court will not reject the unfairness prong of the Plaintiffs' UCL claim.

## IV.    Conclusion

For the foregoing reasons, MBG's Partial Motion to Dismiss [Doc. 75] is GRANTED in part and DENIED in part. The Court GRANTS the Motion with respect to Count II as to Plaintiff Dedman, Count III as to all Plaintiffs, and Count V as to Plaintiffs Bolling and Foster-Gittens. The Court therefore dismisses those Counts. The Court DENIES the Motion as to the rest of the Counts.

SO ORDERED, this ___10th___ day of January, 2025.

THOMAS W. THRASH, JR.
United States District Judge