IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

NATALIE BOLLING, individually and
on behalf of all others similarly
situated, et al.,

     Plaintiffs,

        v.

MERCEDES-BENZ USA, LLC, et al.,

     Defendants.

CIVIL ACTION FILE
NO. 1:23-CV-671-TWT

## OPINION AND ORDER

This is a products liability case. It is before the Court on the Defendants'[1] Motion for Summary Judgment [Doc. 112]. As explained below, the Defendants' Motion for Summary Judgment [Doc. 112] is GRANTED.

## I.    Background[2]

This case involves an alleged defect in panoramic sunroofs ("PSRs") installed in motor vehicles. PSRs are glass sunroofs that, on some vehicles, stretch across much of the entire roof of the vehicle. (Am. Compl. ¶ 1 [Doc. 37];

---

[1] The Defendants in this case are Mercedes-Benz USA, LLC ("MBUSA") and Mercedes-Benz Group AG ("MBG"). When the Court refers to them collectively in this Order, it will call them "the Defendants."

2 The operative facts for the Defendants' Motion for Summary Judgment are, in the majority, taken from the parties' Statements of Undisputed Material Facts and the responses thereto. The Court will deem the parties' factual assertions, where supported by evidentiary citations, admitted unless the respondent makes a proper objection under Local Rule 56.1(B).

Defs.' Answer ¶ 1 [Doc. 96]). The Defendants have been designing, engineering, producing, and distributing vehicles with factory-installed PSRs since the early 2000s. (Am. Compl. ¶ 41; Defs.' Answer ¶ 41).

The Plaintiffs [3] are various individuals who purchased these Mercedes-Benz vehicles who allege that their PSRs shattered under normal driving conditions. (*See* Am. Compl. ¶¶ 20-21, 23, 25; Defs.' Statement of Undisputed Material Facts ("Defs.' SMF") ¶¶ 1-29 [Doc. 112-2]). None of these Plaintiffs were aware of any potential defect with the PSR prior to purchasing their vehicles. (*See* Pls.' Statement of Additional Undisputed Material Facts ("Pls.' Add'l SMF") ¶ 57 [Doc. 116-1]). Accordingly, they seek damages under several state and common law claims. (*See generally* Am. Compl.). After discovery, the Defendants now file this Motion for Summary Judgment.

## II.    Legal Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), (c). A court should view the evidence and draw any

---

[3] At this stage of litigation, the Plaintiffs are Natalie Bolling, Shawn Hale, Lisa Phlegar, and Latoya Foster-Gittens. When the Plaintiffs originally filed their Amended Complaint with this Court, there were three additional plaintiffs: Laura Hale, Lyn Dedman, and Aaron Majette. (*See* Am. Compl. ¶¶ 20-25). In response to the Defendants' Motion to Dismiss the First Amended Complaint, the Court dismissed all claims asserted by these three plaintiffs. (*See generally* Aug. 27, 2024, Op. & Order [Doc. 82]). Thus, only Plaintiffs Bolling, Hale, Phlegar, and Foster-Gittens remain.

inferences in the light most favorable to the nonmovant. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

### III.   Discussion

After the Court dismissed certain claims from the Amended Complaint, (*see generally* Aug. 27, 2026 Op. & Order [Doc. 82]), the following claims remain before the Court:

| Count | Claim | Plaintiffs |
|:---:|:---:|:---:|
| 1 | Breach of Express Warranty | Bolling, Foster-Gittens |
| 2 | Breach of Implied Warranty of Merchantability | Bolling, Foster-Gittens |
| 3 | | |
| 4 | Fraudulent Concealment | Bolling, Foster-Gittens, Phlegar, Hale |
| 5 | Unjust Enrichment | Hale, Phlegar |
| 6 | Alabama Deceptive Trade Practices Act ("ADTPA") | Bolling, Hale |
| 7 | Georgia Fair Business Practices Act ("GFBPA") and the Georgia Uniform Deceptive Trade Practices Act ("GUDTPA") | Foster-Gittens |
| 8 | | |
| 9 | California Unfair Competition Law ("CUCL") | Phlegar |
| 10 | California Consumer Legal Remedies Act ("CCLRA") | Phlegar |
| 11 | (California) Song-Beverly Consumer Warranty Act ("SBCWA") | Phlegar |

As a preliminary matter, the Court briefly reviews choice of law for each state law claim when no foreign statutes are involved. "'When a federal court decides a state law claim, whether acting pursuant to diversity or supplemental jurisdiction, it applies the choice-of-law rules of the jurisdiction in which it[ ] sits.'" *Sowa v. Mercedes-Benz Grp. AG*, 764 F. Supp. 3d 1233, 1256 (N.D. Ga. 2024) (citations omitted) (brackets in original). "Under these rules, Georgia applies *lex loci contractus* (law of the state of contract) to contract actions and *lex loci delecti* (law of the state where the injury occurred) to tort actions." *Id.*

4

"Under *lex loci contractus*, 'contracts are 'governed as to their nature, validity and interpretation by the law of the place where they were made' unless the contract is to be performed in a state other than that in which it was made.'" *Id.* (quoting *Boardman Petroleum, Inc. v. Federated Mut. Ins. Co.*, 135 F.3d 750, 752 (11th Cir. 1998) (quoting *Gen. Tel. Co. v. Trimm*, 252 Ga. 95, 95 (1984))). On the other hand, "'[u]nder the rule of *lex loci delicti*, tort cases are governed by the substantive law of the state where the tort was committed.'" *Id.* at 1256-57 (quoting *Federated Rural Elec. Ins. Exchange v. R.D. Moody & Assocs., Inc.*, 468 F.3d 1322, 1325 (11th Cir. 2006) (citing *Fed. Ins. Co. v. Nat'l Distrib. Co., Inc.*, 203 Ga. App. 763, 765 (1992))).

Here, four state-law claims are at issue: (1) breach of express warranty, (2) breach of the implied warranty of merchantability, (3) fraudulent concealment, and (4) unjust enrichment. Georgia courts are split on the issue of whether breach of warranty claims should be considered contract claims or tort claims. *Id.* at 1258. But for fraudulent concealment and unjust enrichment, Georgia courts apply *lex loci delicti*. *See id.* at 1260. The distinction is irrelevant here. Plaintiffs Bolling and Foster-Gittens both entered into their contracts for their vehicles in and were injured in Alabama and Georgia, respectively. (*See* Defs.' SMF ¶¶ 1, 5, 24, 27). Thus, all of Plaintiff Bolling's claims will be subject to Alabama law while Plaintiff Foster-Gittens' claims will be subject to Georgia law. Similarly, Plaintiffs Phlegar and Hale's non-statutory state law claims will arise out of California law and Alabama

law, respectively. (*See id.* ¶¶ 9, 13, 16, 19).

The Court now turns to the Defendants' arguments in favor of summary judgment. The companies first take issue with the fact that none of the Plaintiffs have produced their PSRs in the course of discovery. (*See* Br. in Supp. of Defs.' Mot. for Summ. J., at 5-11 [Doc. 112-1]). They argue that the lack of the PSRs' production makes it impossible for the Plaintiffs to show that their PSRs were not damaged by road debris or another external influence, as opposed to there being a manufacturing defect. (*Id.* at 5). To bolster this theory, the Defendants offer the expert opinion of Dr. Paul M. Verghese, who states that without the PSR glass, it is impossible to perform a root cause failure analysis to determine if there exists any defect with the Plaintiffs' PSRs. (*See id.* at 15-16 (citing Verghese Decl. ¶¶ 6-11)).

In addition, each of the Plaintiffs signed a New Vehicle Limited Warranty ("NVLW") upon purchasing their Mercedes-Benz vehicles. (*See* Defs.' SMF ¶¶ 3, 12, 18, 26). Each of those NVLWs contained a provision that required positive or physical proof of a manufacturing defect for the warranty to cover glass breakage. (*Id.* ¶ 40). Thus, the Defendants argue that the Plaintiffs should have been on notice that they need to preserve the PSRs. (Br. in Supp. of Defs.' Mot. for Summ. J., at 5).

The Plaintiffs disagree. They argue that, as opposed to a traditional products-liability lawsuit, the evidentiary standard required to demonstrate a defect in their fraud-based/consumer protection claims is much lower and does

not require the production of the defective sunroofs. (Pls.' Br. in Opp'n to Defs.' Mot. for Summ. J., at 6). Furthermore, they argue that, even if this were a traditional product liability case, expert testimony is not necessary to establish that a product is defective and that circumstantial evidence suffices. (*Id.* at 7). Ultimately, they argue that a dispute of material fact exists over whether there is a defect in the PSRs because (1) the Plaintiffs' eyewitness accounts support a finding that no external force caused the breakage, which is corroborated by consumer reports of similar breakages, and (2) Verghese's expert opinions do not definitively foreclose the possibility that the Plaintiffs' PSRs broke due to a defect. (*See id.* at 13-16).

The Court concludes that summary judgment is warranted. For a plaintiff to prevail on any of his or her warranty claims, there must be adequate evidence that allows the plaintiff to show that the defendant caused the

injuries. [4] The same requirement exists to prove unjust enrichment. [5] Similarly, to maintain an action for fraudulent concealment, the plaintiff must show that "the alleged defrauder had actual, not merely constructive, knowledge" of the defect concealed and "[t]here must be some evidence of the silent party's actual knowledge that the defect exists at the time of the sale from which his moral guilt in concealing it can be inferred."[6] Implicit in this requirement is that, for a plaintiff to show that a defendant has concealed a

---

[4] *See Foothills Pharms, Inc. v. Powers*, 313 Ga. App. 630, 632 (2012) (holding summary judgment was proper on breach of express warranty claim because the plaintiff failed to "adduce any evidence regarding why her scooter tipped over"); *Cash v. LG Electronics, Inc.*, 342 Ga. App. 735, 741-42 (2017) (holding summary judgment is proper on Georgia implied warranty claim because the plaintiff had no evidence to establish that "the television was the cause in fact or source of the fire"); *Easterling v. Ford Motor Co.*, 780 F. App'x 834, 836 (11th Cir. 2019) (holding as to the plaintiff's implied warranty claims under Alabama law, that there is no liability for a broken good unless the plaintiff shows that (1) damage did not result from non-ordinary use or when (2) even if the use was ordinary, that the good was unfit); *Lowery v. Sanofi-Aventis LLC*, 535 F. Supp. 3d 1157, 1171-72 (N.D. Ala. 2021) (granting summary judgment on an Alabama breach of express warranty claim because the plaintiff cannot establish that the defendant caused his injuries).

[5] *See Toll Bros., Inc. v. Larkabit P'ship, L.P.*, 375 Ga. App. 567, 575 (2025) (denying summary judgment on Georgia unjust enrichment claim because the plaintiff met its burden of showing how the defendant caused the plaintiff's injury); *Presley v. B.I.C. Const., Inc.*, 64 So.3d 610, 625 (Ala. Civ. App. 2009) (discussing evidentiary requirements of unjust enrichment under Alabama law and stating that a plaintiff must show causation for injury); *Am. Master Lease LLC v. Idanta Partners, Ltd.*, 225 Cal. App. 4th 1451, 1487 (2014) (holding that a plaintiff has the burden to show the extent of the unjust enrichment caused by the defendant under California law).

[6] *Allen v. Harris*, 373 Ga. App. 681, 683 (2024) (citation modified); *see Dodd v. Nelda Stephenson Chevrolet, Inc.*, 626 So.2d 1288, 1293-94 (Ala. 1993) (similar analyzing Alabama law); *Bader v. Johnson & Johnson*, 68 Cal. App. 5th 1094, 1130-31 (2022) (similar reviewing California law on concealment and fraudulent concealment).

defect, the plaintiff must demonstrate that a defect exists. Finally, the statutory claims asserted by the Plaintiffs require a plaintiff to demonstrate that the defendant caused the defect, either implicitly or explicitly.[7]

While it is the Plaintiff's burden to provide sufficient evidence to survive summary judgment on the issue of whether a defect exists within the PSRs, the evidence nonetheless must be viewed in the light most favorable to the Plaintiffs. *See Adickes*, 398 U.S. at 158-59. Here, the Plaintiffs direct this Court to two categories of evidence that they argue create a material dispute of fact over whether a defect exists: (1) the Plaintiffs' own eyewitness reports of the PSR breakage in the absence of external forces and (2) 333 reports made

---

[7] *See Jones v. Coty Inc.*, 362 F. Supp. 3d 1182, 1213-16 (S.D. Ala. 2018) (discussing, on a motion for summary judgment, whether there exists enough evidence on the issue of causation that the defendants failed to adequately warn the plaintiff of a dangerous condition of their product under the ADTPA, implicitly requiring the plaintiff to show that a dangerous condition existed); *Jenkins v. BAC Home Loan Servicing, LP*, 822 F. Supp. 1369, 1375 (finding that Georgia courts require a plaintiff to show causation and reliance for a defendant's misrepresentation under the GFBPA, implicitly requiring there be some issue with the product for the product to misrepresent); *Collins v. Athens Orthopedic Clinic*, 356 Ga. App. 776, 779-80 (2020) (discussing that the plaintiff must show that he will likely be damaged in the future by a defendant's unfair trade practice under the GUDTPA); *Donadio v. Hyundai Motor Am.*, 751 F. Supp. 3d 1013, 1021-22 (C.D. Cal. 2024) (finding that, in order to state a claim on a motion to dismiss for under the CUCL, that a plaintiff must show "the existence of a design defect"); *Moore v. GlaxoSmithKline Consumer Healthcare Holdings (US) LLC*, 713 F. Supp. 3d 660, 672 (N.D. Cal. 2024) (requiring a CCLRA plaintiff to show that a defendant's conduct was deceptive and caused the plaintiff harm, implicitly requiring there be something about the product to deceive about); *Carver v. Volkswagen Grp. of Am., Inc.*, 107 Cal. App. 5th 864, 877-79 (2024) (explaining that the SBCWA supplements California law on express and implied warranties and that the analysis for a claim is the same under California law).

by consumers to the Defendants of similar breakages. (Pls.' Br. in Opp'n to Defs.' Mot. for Summ. J, at 8-9). This evidence alone may suffice to survive summary judgment. But Dr. Verghese's expert opinion forecloses any hope. In his analysis, he makes certain findings that are relevant to this conclusion. He first notes that a fractography analysis can only be performed by looking at either the frame of the PSRs or the damaged PSRs themselves, which were not retained. (Verghese Dec. ¶¶ 6-9 [Doc. 112-14]). Because this evidence isn't available, Dr. Verghese still performed an analysis with the documents before him to the extent he could.

He first conducted analysis of past history of PSR breakage. Dr. Verghese concluded that the incident rate of PSR breakage in the Defendants' vehicles from 2006 to 2016 was around 0.0086%, which, in his opinion, was sufficiently low to conclude that a systemic defect did not exist before the Plaintiffs purchased their vehicles. (*Id.* ¶¶ 12-13). Dr. Verghese then turned to an inspection of each of the Plaintiffs' vehicles after their PSRs had been replaced. In all of the Plaintiffs' vehicles, he found evidence consistent with external debris striking the vehicles. (*See id.* ¶¶ 25, 30, 35, 40). Specifically, with Plaintiff Phlegar, he found an "accumulation of rocks and other debris" within the engine compartment. (*Id.* ¶ 40). Finally, he concluded that each of the Plaintiffs' cars showed no evidence of any manufacturing defect with the PSRs after their replacement. (*See id.* ¶¶ 27, 32, 37, 42).

Of course, Dr. Verghese's expert opinion does not foreclose the possibility of the existence of a defect within the PSRs, as the Plaintiffs make sure to note. (*Id.* ¶ 11; *see* Pls.' Br. in Opp'n to Defs.' Mot. to Dismiss, at 9-11). Additionally, it is true that Dr. Verghese's analysis concerned data taken before and after the incidents of PSR breakage. But all four vehicles were denied reimbursement under the NVLW for their PSRs soon after the breakage occurred. (*See* Defs.' SMF ¶ 41; Pls.' Response to Defs.' SMF ("Pls.' Resp. to Defs.' SMF") ¶ 41 [Doc. 116-1]). While the reason why is disputed, the express terms of the NVLW require positive physical proof of a manufacturing defect with the PSRs to obtain reimbursement. (*Id.*).

Even if the Court were to take the Plaintiffs' eyewitness testimony or the other consumer reports that the PSRs broke without any external force at face value, there is parallel evidence that the Defendants can point to that shows that no manufacturing defect existed at or near the time of breakage.[8] The only true analysis in this case is carried out by Dr. Verghese, though it is limited in scope. But, as the Defendants stress, the reason why the evidence within this action is limited is because none of the PSRs are available for

---

[8] There is also little reason for the Court to credit the Plaintiffs' testimony on the existence of a manufacturing defect. Each of the Plaintiffs merely state that they were driving when their PSRs spontaneously shattered while claiming that nothing that struck their vehicles at that time. (Defs.' SMF ¶¶ 5, 13, 19, 27; Pls.' Resp. to Defs.' SMF ¶¶ 5, 13, 19, 27). This testimony fails to establish any evidence of a manufacturing defect other than pure circumstance.

inspection.

This is not to say that the Plaintiffs could never have met their evidentiary burden without providing the PSRs to the Defendants. The Plaintiffs could have provided an expert that conducted his or her own analysis to rebut Dr. Verghese's analysis or supply independent analysis as to what type of manufacturing defect could have existed within the PSRs. But the Plaintiffs fail to present any evidence that shows *how* the Defendants caused the manufacturing defect, dooming their claims against the Defendants.

In fact, in making their argument that circumstantial evidence suffices to survive summary judgment, the Plaintiffs cite two cases that highlight the flaw in their evidentiary position. (*See* Pls.' Br. in Opp'n to Defs.' Mot. for Summ. J., at 7 (citing *Firestone Tire and Rubber Co. v. King*, 145 Ga. App. 840, 842 (1978), then citing *Beaty v. Ford Motor Co.*, 854 F. App'x 845, 848 (9th Cir. 2021)). While the Georgia Court of Appeals and the Ninth Circuit do find that circumstantial evidence of a defect suffices to survive summary judgment, they do so when the plaintiff already provided expert testimony that attempted to explain the specific defect he or she complains of within the product. *See Firestone Tire and Rubber Co.*, 145 Ga. App. at 841; *Beaty*, 854 F. App'x at 848. That is not the case here. All the Plaintiffs have provided to support their position is that (1) a breakage happened and (2) other people who purchased the Defendants' vehicles also had that breakage. They theorize that the breakage could have happened because of the Defendants' use of laminated

12

glass, but they have little evidence at all to support this theory. (*See* Pls.' Add'l SMF ¶¶ 44-47). That alone is not enough to survive the Defendants' motion.

Therefore, the Court ultimately concludes that, even when viewing the facts in the light most favorable to the Plaintiffs, there is no material dispute of fact regarding whether the Plaintiffs can meet their evidentiary burden over whether a defect existed in the PSRs. Because each of the Plaintiffs' claims require this proof, the Court grants the Defendants' Motion for Summary Judgment.

## IV.   Conclusion

For the reasons discussed above, the Defendants' Motion for Summary Judgment [Doc. 112] is GRANTED. The Clerk is directed to enter judgment and close the case.

SO ORDERED, this ___14th___ day of July, 2026.

THOMAS W. THRASH, JR.
United States District Judge